## COMMISSIONER OF INTERNAL REVENUE v. HECHT CO.

### No. 5595.

Circuit Court of Appeals, Fourth Circuit.
July 19, 1947.

Newton K. Fox, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and Lee A. Jackson, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

I. Herman Sher, of Washington, D. C. (R. A. Bartlett, of Washington, D. C., on the brief), for respondent.

Smith, Kilpatrick, Cody, Rogers & McClatchey, of Atlanta, Ga. (Marion Smith and Louis Regenstein, Jr., both of Atlanta, Ga., on the brief), amici curiae.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

The Commissioner of Internal Revenue appeals from a decision of the Tax Court whereby Section 30.736(a)-3 of Treasury Regulations 109 was declared invalid insofar as it prohibits the allowance of deductions (including deductions for bad debts) in the computation of excess profits net income for any excess profits taxable year on account of installment sales made before January 1, 1940, by a taxpayer who has been computing its income from installment sales on the installment basis and has elected to change its method of accounting and compute its income on the accrual basis as provided by Section 736 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 736.[1] The opinion of the Tax Court, reported in 7 T.C. 643, is based on reasons clearly and concisely set forth in its opinion concurrently filed in Mackin Corp. v. Commissioner, 7 T.C. 648.

The Hecht Company, at the close of its fiscal year ended January 31, 1943, became eligible to make the election provided by Section 736 of the Internal Revenue Code, and desiring to avail itself of the privilege, filed an amended excess profits tax return for the year ended January 31, 1941. It had previously computed its income from installment sales under the method provided by Section 44(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 44(a), which permits the return as income from such sales in any tax year "that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price." Having made the election, Section

[1] § 736 (as added by Sec. 222 (d) of the Revenue Act of 1942, c. 619, 56 Stat. 798). Relief for installment basis taxpayers and taxpayers with income from long-term contracts.

"(a) Election to accrue income. In the case of any taxpayer computing income from installment sales under the method provided by section 44 (a), if such taxpayer establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, that the average volume of credit extended to purchasers on the installment plan in the four taxable years preceding the first taxable year beginning after December 31, 1941, was more than 125 per centum of the volume of such credit extended to such purchasers in the taxable year, or the average outstanding installment accounts receivable at the end of each of the four taxable years preceding the first taxable year beginning after December 31, 1941, was more than 125 per centum of the amount of such accounts receivable at the end of the taxable year, or if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence, in either case including only such years for which the income was computed under the method provided in section 44 (a), it may elect, in its return for the taxable year, for the purposes of the tax imposed by this subchapter, to compute, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, its income from installment sales on the basis of the taxable period for which such income is accrued, in lieu of the basis provided by section 44 (a). Except as hereinafter provided, such election shall be irrevocable when once made and shall apply also to all subsequent taxable years, and the income from installment sales for each taxable year before the first year with respect to which the election is made but beginning after December 31, 1939, shall be adjusted for the purposes of this subchapter to conform to such election. In making such adjustments, no amount shall be included in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940. * * *"

736 required the taxpayer to adjust its income from installment sales for the preceding excess profits tax years to conform to the election. "In making such adjustments", the section declares, "no amount shall be included in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940." Accordingly, the taxpayer did not include any part of the installment payments received in the fiscal year ending January 31, 1941, on account of sales made before January 1, 1940, when the excess profits tax law went into effect; but the taxpayer deducted from gross income for the year ending January 31, 1941, $55,392.45 for bad debts found to be uncollectible in that year upon installment sales made prior to February 1, 1940; and the taxpayer also deducted $33,211.22 for collection expenses attributable to installment sales made before that date. The Tax Court allowed the deduction for collection expenses but held that the taxpayer was not entitled to deduct the full amount of the bad debts since no tax had been paid on the expected profits, and reduced this deduction to the sum of $34,771.77, which represented the unrecovered cost of the bad debts, and as the result of these changes ascertained a deficiency in the excess profits tax of $10,333.03. The taxpayer accepted this ruling, but the Commissioner claimed a deficiency in the sum of $30,592.35 on the ground that the deductions thus approved by the Tax Court were erroneously allowed.

The Commissioner does not deny that the deductions allowed were proper for income tax purposes, but asserts that they were not allowable for excess profits tax purposes under the provisions of Section 30.736 (a)-3 of Treasury Regulations 109 which provides, in part, as follows:

"Sec. 30.736 (a)-3 (as added by T. D. 5257) Computation of Income on Straight Accrual Basis.—If the taxpayer has elected under section 736 (a) and section 30.736 (a)-2 to compute for excess profits tax purposes its income from installment sales on the basis of the taxable year for which such income is accrued, in lieu of the basis provided by section 44 (a), the gross income of the taxpayer from installment sales shall be computed upon such accrual basis. Likewise all deductions under section 23 allowable in computing net income and attributable to such sales, shall be computed upon the straight accrual basis. However, no income or deductions (including deductions for bad debts) shall be included in the computation of excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940. * * * *"

The Tax Court held the concluding sentence of the quoted portion of the regulation invalid insofar as it purports to deny the deduction of such losses and expenses as were taken by the taxpayer in this case, and the propriety of that ruling is the only question before us. It was pointed out by the Tax Court in its opinion in Mackin Corp. v Commissioner, that Section 736 (a) was passed for the express purpose of affording relief for installment basis taxpayers who had been hit by changes in the credit restrictions adopted by the Government in 1941 which swelled their tax liability by increasing their income in one or more tax years without normal offsetting selling costs. In like manner we showed in Kimbrell's Home Furnishings v. Commissioner, 4 Cir., 159 F.2d 608, 610, that the statute was passed to place eligible installment sellers on an equal footing with taxpayers on an accrual basis so far as the excess profits tax was concerned. Without the new statute this result could not have been obtained because under the regulations theretofore existing, Reg. 103, Sec. 19.41-2; Reg. 111, Sec 29.41-2, a taxpayer on the installment basis could change to the accrual basis only with the consent of the Commissioner, and in such event, was met with the following requirement, to wit:

"The foregoing requirements relative to a change of accounting method are not applicable if a taxpayer desires to adopt the installment basis of returning income * * * but are applicable if a taxpayer desires to change from such basis to a straight accrual basis. In cases where permission to make such change is granted, the taxpayer will be required to return as additional income for the taxable year in

which the change is made all the profit not theretofore returned as income pertaining to the payments due on installment sales contracts as of the close of the preceding taxable year."

This provision was not unreasonable when promulgated, for if it had not been made, the installments received during the year of change on sales made in prior years would have escaped taxation altogether; but the application of the provision to a taxpayer changing from an installment basis to an accrual basis in 1943 would have imposed an excess profits income tax upon sales which took place before January 1, 1940, when the excess profits tax went into effect. Obviously the regulation was not suited to the situation which Congress desired to ameliorate, and accordingly, when Congress provided that an installment taxpayer who elected to accrue his income under Section 736 (a) must adjust his income from installment sales for each tax year after December 31, 1939, Congress also declared, as shown in the quotation above set out, that in making such adjustments no amount should be included on account of installment sales made before the effective date of the excess profits tax.

■ With respect to the controversy which has arisen as to the meaning of this provision, we are in accord with the view of the Tax Court that the language relates merely to profits on installment sales to be included in computing the excess profits net income, but has no effect on the deductions therefrom to be allowed in determining that net income. In its choice of language, Congress followed the pattern of the Internal Revenue Code which customarily speaks of the inclusion or exclusion of items of income and the allowance or disallowance of items of deduction. Compare, for example,the provisions of Sections 711 (a) (1)(C), 711 (a)(2)(E) and 711 (b)(1)(C) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 711 (a)(1)(C), (2)(E), (b)(1)(C), where Congress is dealing with the exclusion of items of excess profits net income, with the provisions of Sections 711 (a)(1)(A), 711 (a)(1)(J) and 711 (a) (2)(C) of the Internal Revenue Code where Congress is dealing with the disallowance of deductions therefrom. If de-

ductible items had been in the mind of Congress when making the provision in question, it would have been easy for Congress to say not only that no amount from the pre-tax period should be included, but also that no deduction on account of business originating in that period should be allowed. We do not agree with the contention that when Congress said no amount shall be included, it meant that no deduction shall be allowed.

In opposition to this viewpoint, the Commissioner points out that during the progress of Section 736(a) through the Senate, the words "gross income" as they appeared in the body of the section in the House bill were stricken out, and the word "income" was substituted. See S.Rep. No. 1631, 77th Cong., 2d Sess. pp. 207-208. The Commissioner also points out that the crucial sentence of Section 736(a) in prohibiting the inclusion of any amount on account of installment sales before January 1, 1940, refers to the computation of excess profits net income; and he therefore contends that the prohibition must be construed to cover not only items of income but also items of deduction such as a deduction for bad debts. We do not find that the use of these particular terms requires an interpretation which denies the full relief to installment sellers that the Act was intended to afford. It must be borne in mind that in the computation of either gross or net excess profits income, the exclusion of items of income, ordinarily includible therein, will accomplish the purpose of the Act as found by the Tax Court. The reports of the Committees of Congress do not support the construction for which the Commissioner contends.

The burden of the Commissioner's argument, however, is that if items of income received in the pre-tax period are excluder from the computation, deductions growing out of sales in the same period must also be disallowed. There is a seeming cogency and consistency in the contention, but it runs counter to the express requirements of other sections of the tax laws and to the general scheme of federal income tax accounting which is firmly established by the decisions of the courts. Section 23 (k) (1) of the Internal Revenue Code, 26 U.S.

C.A. Int.Rev.Code, § 23 (k)(1), provides that debts ascertained to be worthless and charged off in a taxable year shall be allowed as a deduction in computing net income; and Section 43 provides that deductions "shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period." This method has been followed so long in the income tax laws that we are not warranted in concluding, without an explicit direction, that Congress intended to depart from it in the computation of the excess profits net income which is itself based on the normal tax income. See 711 (a), I.R.C. In the administration of the income tax statutes it has been held in cases of seeming injustice to the taxpayer that the income on which the tax is imposed should be computed on the basis of fixed annual accounting periods rather than on the basis of particular transactions in which the taxpayer is engaged. Thus in Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383, a taxpayer who had suffered heavy losses from breach of contract in the years 1913 to 1916 was not permitted to readjust its returns for those years when it made a substantial recovery from the other contracting party in 1920, but was required to account for the sum received as income in the latter year. The court said: (282 U.S. at pages 363, 365, 51 S.Ct. at pages 151, 152, 75 L.Ed 383)

"All the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or, at the option of the taxpayer, the particular fiscal year which he may adopt.

\*    \*    \*    \*    \*    \*

"The Sixteenth Amendment was adopted to enable the government to raise revenue by taxation. It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation. It is not suggested that there has ever been any general scheme for taxing income on any other basis."

Again, in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, the court considered the concluding clause of Section 43, I.R.C. quoted above, which under certain circumstances permits a taxpayer to depart from the usual method of taking deductions in the year in which they are paid or accrued or paid or incurred. The court held that the exception was merely intended to take care of fixed liabilities payable in fixed installments over a series of years, and did not permit a taxpayer who withheld disputed processing taxes in 1935 to deduct them in that year but that the taxpayer must take the deductions therefor in 1936, 1937 and 1938, when they were actually refunded to the taxpayer's customers. In speaking of the clause in Section 43 in question, the court said: (321 U.S. at pages 285-287, 64 S.Ct. at pages 598, 599, 88 L.Ed. 725)

"But we think it was not intended to upset the well understood and consistently applied doctrine that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system and, for the benefit of the Government or the taxpayer, treated on a basis which is neither a cash basis nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the Government or to the taxpayer.

\*    \*    \*    \*    \*    \*

"This legal principle has often been stated and applied. The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount."

Finally, the Commissioner's position cannot be sustained because it would

deprive the electing installment basis taxpayer of an advantage which the accrual basis taxpayer enjoys and to that extent would frustrate the purpose of the Act. It is not denied that accrual basis taxpayers in computing their excess profits net income have been allowed deductions for their operating expenses, collection expenses, losses and the like in the year in which they were incurred although they were attributable to pre-1940 sales. We do not think that the direction in the statute that requires the electing taxpayer to compute his income on the accrual basis "in accordance with regulations prescribed by the Commissioner with the approval of the Secretary" authorizes the issuance of a regulation that does not observe the spirit of the Act or faithfully carry out the will of Congress. The decision of the Tax Court is

Affirmed.