### COMMISSIONER OF INTERNAL REVENUE v. MACKIN CORPORATION.
### No. 4247.

Circuit Court of Appeals, First Circuit.
Dec. 4, 1947.

Newton K. Fox, Sp. Asst. to the Atty. Gen. (Theron L. Caudle, Asst. Atty. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., of counsel), for the Commissioner.

Myron S. Winer and Helmar M. Raphael, both of Boston, Mass., for Mackin Corporation.

Smith, Kilpatrick, Cody, Rogers & McClatchey, of Atlanta, Ga. (Marion Smith and Louis Regenstein, Jr., both of Atlanta, Ga., of counsel), amici curiae.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue for review of decisions of the Tax Court which failed to sustain his determination of certain deficiencies in the respondent's excess profits taxes for the years 1940 and 1941. The facts have been stipulated.

The respondent, Mackin Corporation, ever since its organization under the laws of Maine in 1929, has been regularly engaged in Portland in the business of selling clothing and jewelry at retail on the installment plan. It reported its income for Federal tax purposes for the taxable years 1938 to 1942, inclusive, on the installment method of accounting pursuant to § 44(a) of the respective Revenue Acts applicable to those years and of the Internal Revenue Code.[1] In conformity with its practice in prior years, it filed its income and excess profits tax returns for the taxable years 1940 and 1941 on the same method of accounting.

Subsequently, having qualified under the Commissioner's regulations, it elected and was permitted to compute its income for excess profits tax purposes for the taxable year 1942 on the accrual method of accounting as permitted by § 736(a) of the Internal Revenue Code, as added by § 222(d) of the Revenue Act of 1942.[2] In addition, as required by § 736(a), it filed amended returns for excess profits tax purposes for its taxable years 1940 and 1941 (its taxable year has always been the calendar year), reflecting its income for those years for the purposes of that tax on the accrual method of accounting also. In these amended returns for 1940 and 1941 it deducted as bad debts the unrecovered out-of-pocket cost of goods which it had sold on the installment plan prior to January 1, 1940, the obligations for payment of which became worthless in 1940 and 1941 respectively. The Commissioner disallowed these deductions and determined deficiencies for both years accordingly. The respondent filed separate petitions with the Tax Court for redetermination of these deficiencies, which the Tax Court consolidated, and, disagreeing with the Commissioner, entered decisions favorable to the respondent with respect to the above deductions. The Commissioner thereupon brought this petition for review.

The question presented is whether a taxpayer, which was reporting its income for the purpose of federal taxation on the installment basis pursuant to § 44(a) of the Internal Revenue Code, but which elected and was permitted under § 736(a) of the

---

[1] "§ 44 Installment basis

"(a) Dealers in personal property. Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price." 26 U.S.C.A. Int.Rev. Code § 44(a).

[2] "§ 736. Relief for installment basis taxpayers and taxpayers with income from long-term contracts

"(a) Election to Accrue Income. In the case of any taxpayer computing income from installments sales under the method provided by section 44(a), if such taxpayer establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary * * * [that its business meets the statutory test laid down] it may elect, in its return for the taxable year, for the purposes of the tax imposed by this subchapter, to compute, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, its income from installment sales on the basis of the taxable period for which such income is accrued, in lieu of the basis provided by section 44(a). * * * such election shall be irrevocable when once made and shall apply also to all subsequent taxable years, and the income from installment sales for each taxable year before the first year with respect to which the election is made but beginning after December 31, 1939, shall be adjusted for the purposes of this subchapter to conform to such election. *In making such adjustments, no amount shall be included in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940.*" (Italics supplied). 26 U.S.C.A. Int.Rev.Code, § 736(a).

Code to report its income for excess profits tax purposes on the accrual basis for 1942, is entitled to deduct as bad debts in its amended returns for 1940 and 1941 the unrecovered costs of goods sold by it in 1939, the obligations for the purchase of which became worthless and were charged off during the years in which the deductions were taken.

This question arises because of the taxpayer's permitted change in the method of reporting its income. To understand it reference must be made to the accounting systems involved and to the reasons which prompted Congress in 1942 to give taxpayers a larger measure of freedom than they had previously enjoyed in changing from the installment to the accrual system in so far as excess profits taxes were concerned.

The installment system of accounting is like the cash system in that amounts received are taken into income as they are paid, irrespective of the year in which the goods were sold. But if such a concern is on the installment basis of accounting for purposes of taxation it will not return the gross amount of all installments received by it during a taxable year as its gross income for that year. The reason for this is that a portion of each installment received represents a portion of the cost of the item sold, and the remaining portion of the installment represents a portion of the profit attributable to the sale. And the division of each installment payment into the cost of the goods sold and the gross profits of the transaction is the same for each installment, and is determined by the ratio of cost to total contract price. Thus if the mark-up on an item sold by an installment seller accounting on the installment basis is 100%, one-half of each installment it receives for the item will represent a portion of the cost of the goods sold and the other half a portion of the gross profits on the sale.

Consequently, when an installment account becomes uncollectible, the total amount of outstanding installments is not deductible as a bad debt since a portion of those outstanding installments represents a profit which has never been reported as income and taxed accordingly. On the installment basis, uncollectible installments are deductible only to the extent that the cost of the goods sold has not been recovered from the defaulting purchaser at the time of his default.

The accrual system of accounting differs from the installment system in that the entire sales price of goods sold is reported as income as of the date of sale even though payment for the goods may be in installments extending over a period of years thereafter. Therefore on the accrual basis uncollectible installments are deductible in full as bad debts since the total profit on the sale has been taken into income and taxes paid thereon.

The time when losses are deductible is the same under both systems of accounting. It is in the taxable year in which "paid or accrued" or "paid or incurred" (§ 43, Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 43) and losses on account of bad debts accrue or are incurred "within the taxable year" in which they "become worthless" (§ 23(k) (1) of the Code) regardless of the year in which the debt arose. It is conceded by the Commissioner that the question presented would not have been raised if the taxpayer had accounted on either one basis or the other consistently throughout the tax years involved. It is raised by the Commissioner only because the taxpayer changed from the installment to the accrual basis under the relief provisions of § 736(a), supra.

We therefore turn to the reasons which moved Congress to enact that section and to a consideration of its provisions.

Under the law as it stood prior to the enactment of § 736(a) a qualifying taxpayer electing to report its income on the installment basis pursuant to § 44(a) could not thereafter elect to change to the accrual basis. It could make such a change only with the consent of the Commissioner. In the event that a taxpayer obtained consent for such a change, however, the Commissioner required the taxpayer "to return as additional income for the taxable year in which the change is made all the profit not theretofore returned as income pertaining to the payments due on installment sales

contracts as of the close of the preceding taxable year." Reg. 103 § 19.41-2.

The purpose of this requirement obviously was to prevent income which had in fact "accrued" to a taxpayer while on the installment basis during the years preceding its change to the accrual basis from escaping taxation altogether. But this regulation necessarily had the result of "bunching" the income of installment basis taxpayers in the year of their change to the accrual basis. "Bunching" the income of sellers of personal property on the installment plan during the war years, however, even the inevitable "bunching" of the income of concerns in that business caused by the impact of the war economy upon them, was what Congress intended to relieve so far as excess profit taxes were concerned by the provision of § 736(a) italicized above that taxpayers in adjusting their returns for excess profits tax taxable years prior to their election to change systems of accounting shall not include any amount "in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940." [3]

This provision of § 736(a) clearly deals with the inclusion of income, not the taking of deductions. But the Commissioner in his regulation promulgated pursuant to the section has taken the position that to permit a taxpayer in changing from the installment to the accrual basis to take deductions arising out of pre-1940 sales while not including profits from such sales in its income, would give it a tax advantage which Congress could not have intended to confer by the section. Therefore he provided in § 30.736(a)-3 of his Regulations 108 that:

"If the taxpayer has elected under section 736(a) and section 30.736(a)-2 to compute for excess profits tax purposes its income from installment sales on the basis of the taxable year for which such income is accrued, in lieu of the basis provided by section 44(a), the gross income of the taxpayer from installment sales shall be computed upon such accrual basis. Likewise all deductions under section 23 allowable in computing net income and attributable to such sales, shall be computed upon the straight accrual basis. However, no income *or deductions (including deductions for bad debts)* shall be included in the compu-

---

[3] "Report of Senate Committee on Finance, 77th Congress, 2nd Session, No. 1631, pgs. 42–43:

"Your committee has amended the existing law to grant relief to taxpayers reporting on the installment basis. Under the installment method of accounting a large part of the income arising from installment sales is reported in the year in which the installment payments are received instead of in the year in which the sales are made. On the other hand, expenses relating to installment sales are deducted in the year in which the sales are made.

"Due to recent regulations of the Federal Reserve Board, increasing the size of the down payments and shortening the payment period on installment contracts and the shifting of certain concerns to war contracts, there is a bunching of incomes in the taxable year without the normal installment selling costs to reduce such income. To overcome this hardship, the House bill provided that taxpayers who establish that the average volume of credit extended to purchasers on the installment plan in the 4 preceding taxable years was more than 125 percent of such credit extended to such purchasers in the taxable year, may elect to report their income from installment sales on the accrual basis with respect to installment sales made after December 31, 1939."

See also id. pps. 207, 209; Report of Conference Committee No. 2586, p. 63; Report of House Committee on Ways and Means, 77th Congress, 1st Session, No. 2333, pg. 26; id. pg. 150.

Furthermore, as the Tax Court noted, the effect of the economic situation existing in 1942 with respect to installment basis taxpayers was to subject to excess profits tax income from sales made in prewar years when there was no such tax, that is, income which had in fact accrued before the adoption of excess profits tax legislation. The excess profits tax, being an emergency war measure aimed at profits attributable to war years in excess of normal or average profits during prior base period years, therefore fell with undue impact upon installment basis taxpayers since their method of accounting, in view of war-time business conditions, would not afford an accurate measure of their true "excess" profits attributable to war years.

531

tation of excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940." (Italics supplied.)

■ As the Tax Court pointed out, the portion of his regulation which we have italicized "precisely covers" the situation presented, and, if valid, justifies the Commissioner's determination of deficiencies. We agree, however, with the Tax Court in the case at bar (7 T.C. 648) and with the Circuit Court of Appeals for the Fourth Circuit in Commissioner v. Hecht Co., 4 Cir., 163 F.2d 194, that the regulation is invalid.

The Commissioner's contention that his regulation embodies at least a reasonable interpretation of the statute and therefore is valid, rests basically upon its legislative history. He says that the legislative history of the first sentence of § 736(a) indicates that when Congress provided therein that taxpayers like the respondent may change their method of computing "income" it intended the word to mean "net income" and therefore intended to include deductions within the scope of its meaning. That is to say, he contends that Congress in using the word "income" in the first sentence of the section meant "net income" and thereby in the sentence of the section quoted in italics in footnote 2 above intended not only to allow taxpayers changing from the installment to the accrual method of reporting to omit from their computation of excess profits net income for post 1940 years items of income accruing to them in pre-1940 years, but also intended to forbid them from taking any deductions from post 1940 excess profits income on account of deductible items which had accrued to them in pre-excess profits tax years. And he says that interpreting the last sentence of the section of the statute as quoted above to conform with the legislative history of its first sentence, as he did in his regulation, is both "logical" and "equitable", whereas interpreting it as the taxpayer and the Tax Court did is not.

■ It seems to us clear that read literally and apart from its context the sentence of § 736(a) which provides that in

adjusting income for excess profits tax taxable years preceding an election to change to the accrual system to conform to such election "no amount shall be included in computing excess profits net income for any excess profits tax taxable years on account of installment sales made in taxable years beginning before January 1, 1940", specifically refers to the inclusion of items of income only, not to the taking of deductions. The word "included" is a word of art consistently used by Congress in tax statutes to refer to income items as distinguished from items of deduction. When Congress has deductions in mind it customarily uses the word "allowed". See Commissioner v. Hecht Co., 4 Cir., 163 F.2d 194, 197. It would seem that if Congress had intended to bar the allowance of deductions as well as the inclusion of income arising out of transactions antedating January 1, 1940, it would have said so in clear language as it could have done in the statute fully as easily as the Commissioner did in his regulation.

Nevertheless the Commissioner contends that his interpretation of the above sentence as denying the allowance of deductible items as well as permitting the exclusion of income items accruing in pre-1940 years is supported by the legislative history of the first sentence of the section in which it appears.

Section 736(a), as it originated in the House, permitted taxpayers on the installment basis to elect to compute their "gross income" on the accrual basis for the purpose of excess profits taxes. The Senate Committee on Finance, however, amended the section to permit an election to compute "income" instead of "gross income" saying in its report only that: "Under the amendment of your committee, the election is to compute income rather than gross income * * * Your committee has provided for the computation of income, rather than gross income, upon the accrual basis in such years. However, no amount shall be included in excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940, and the average base period net income shall not be increased by any payment re-

ceived after the base period and attributable thereto."

This meager history seems to us inconclusive. We cannot see how the Commissioner can draw much comfort from it. But even granting some force to the argument that an amendment of "gross income" to "income" connotes the meaning of "net income", and also that as an abstract proposition both items of income and items of deduction are included in the concept of "net income", still the fact remains that as a general principle of the law of federal taxation deductible items, regardless of the accounting system used by a taxpayer, may not be allocated to the tax years in which the transaction giving rise to them was consummated, but must be taken in the tax year in which they are "paid or accrued", or "paid or incurred" depending upon the method used by the taxpayer as the basis for computing his net income. Section 43, Internal Revenue Code. We think in view of its long experience in tax legislation that if Congress had intended to require that deductions, contrary to this general principle of federal tax law, cannot be taken when "paid or accrued" or "paid or incurred", it would certainly have said so explicitly and not left so important a matter to vague inference. See a full discussion of the point in Commissioner v. Hecht Co., 4 Cir., 1947, 163 F.2d 194, 197, 198.

Furthermore, it seems to us that the Commissioner's interpretation of the statute instead of being "logical" and "equitable" is the reverse. As we have noted, a taxpayer in the business of selling personal property on the installment plan which had never elected to report on the installment basis pursuant to § 44(a) of the Code, but instead had consistently reported on the accrual basis, would unquestionably have been allowed the deductions for out-of-pocket unrecovered cost of goods sold taken by the taxpayer in the case at bar. Indeed a consistent accrual basis taxpayer would be allowed to deduct the total amount of outstanding uncollectible installments, since gross profits on the transaction out of which the loss arose would have been accrued, reported as income, and taxes paid thereon. And we have also noted that a taxpayer consistently on the installment basis would unquestionably have been allowed to deduct its unrecovered out-of-pocket cost, although not total uncollectible installments, since it had never paid taxes on gross profits. We concede that to permit a taxpayer changing from the installment basis to the accrual basis under § 736(a) to deduct total uncollectible installments as though it had been consistently on the accrual basis would give it an undue tax advantage since it would not have accrued and paid taxes on gross profits. But it in no way follows from this that a taxpayer electing the relief provisions of § 736(a) should not be allowed to deduct unrecovered out-of-pocket cost. It seems to us that to make the relief which Congress obviously intended to extend in § 736(a) complete and effective a taxpayer availing itself of the benefits of the section must be treated on a parity, so far as the deductibility of unrecovered out-of-pocket cost of goods sold is concerned, with taxpayers consistently remaining on either the accrual or installment basis of accounting. We think that this result is "logical" and "equitable" and that it is the result which Congress clearly intended.

It is our conclusion that the Commissioner by providing in his regulations that no "deductions (including deductions for bad debts)", as well as no income, on account of installment sales made in taxable years beginning before January 1, 1940, shall be included in the computation of excess profits net income for any excess profits tax taxable year attempted to legislate a provision into the statute which Congress for good reason had seen fit to omit. To that extent the regulation is therefore invalid.

The decisions of the Tax Court are affirmed.