## HADLEY FURNITURE CO. v. UNITED STATES.

### Civ. A. No. 7661.

United States District Court
D. Massachusetts.

Dec. 7, 1949.

Maurice H. Baitler, Springfield, Mass., for plaintiff.

George F. Garrity, U. S. Attorney, Boston, Mass., W. Arthur Garrity, Jr., Asst. U. S. Atty., Boston, Mass., for defendant.

FORD, District Judge.

Plaintiff, Hadley Furniture Company, brings this action to recover alleged overpayment of excess profits taxes under 26 U.S.C.A. § 710 et seq., for its taxable year ending February 28, 1942.

Plaintiff is a corporation engaged in retail furniture sales and many of its sales are made to purchasers on installment plans. During the years material here it has reported its income from such installment sales on the installment basis provided in 26 U.S.C.A. § 44. In 1943 it elected, under the provisions of 26 U.S.C.A. § 736 (a), to report its income from installment sales for excess profits tax purposes on the accrual basis continuing however to report this income in accordance with Section 44 for income tax purposes. This election required the readjustment of its excess profits tax returns for its taxable years beginning with March 1, 1940 to make them conform to this election of the accrual basis.

The basic issues between the parties as to the computation of plaintiff's excess profits tax are: (1) whether plaintiff is entitled to a deduction in respect of bad debts and losses on repossession involving merchandise sold prior to March 1, 1940, either of the unrecovered cost of such merchandise or of the full amount of the loss thereon, including unrealized profits on such sales; and (2) whether plaintiff is entitled to include in its equity adjusted capital for the purpose of determining its excess profits credit by the invested capital method, either the full amount of its reserve for unrealized profits at the beginning of the tax year or at least such portion of said reserve for unrealized profits as arises out of sales made after February 29, 1940. A judgment in favor of the plaintiff on either or both of these points will result in an increase both in plaintiff's federal income tax for the year in question and its Massachusetts state income tax, since in determining both of these plaintiff has been allowed a deduction for the full amount of the excess profits tax paid. This will make it necessary to decide (1) whether plaintiff is entitled to a deduction for the additional tax it will have to pay to the state; and (2) whether judgment should be rendered for the full amount of the refund of the excess profits tax paid or only for the difference between the amount of this refund and the amount which it will then owe to the United States as an additional income tax payment.

Plaintiff contends it is entitled to a deduction of the full amount of its losses on bad debts and repossessions arising out of sales made to installment purchasers before March 1, 1940, or at least to a deduction of such part of said losses as represent unrecovered out-of-pocket cost of the articles sold. It claims this deduction should be allowed for the taxable year in question ending February 28, 1942 and also for its taxable year ending February 28, 1941, where its allowance would increase the unused excess profits credit to be carried over and applied to further reducing the 1942 tax. As to the latter partial claim, plaintiff's contention is plainly right and defendant in its brief concedes it. Commissioner of Internal Revenue v. Mackin Corporation, 1 Cir., 164 F.2d 527; Commissioner of Internal Revenue v. Hecht Co., 4 Cir., 163 F.2d 194. But these cases do not decide the question of whether plaintiff is entitled to deduct also the remaining part of such losses which represent the profit expected to result from such sales and never realized. In the Mackin case only a deduction of the unrecovered cost was sought and allowed. And in the Hecht case the losses at issue did not arise from transactions in taxable years beginning be-

fore December 31, 1939. Taxpayer is not entitled to the deduction under the applicable Treasury Regulations 112, Section 35.736(a)-3 (as amended by T.D. 5643, July 8, 1948 [1] in the light of the decision in Commissioner of Internal Revenue v. Mackin Corporation, supra.) Section 736 (a) allows the taxpayer to elect to compute its tax on the accrual basis "in accordance with regulations prescribed by the Commissioner with the approval of the Secretary." This regulation, if valid, governs the allowance of the deduction. It is clearly valid, for it does not contravene the provisions or the spirit of Section 736(a) nor does it frustrate in any way the purpose of that section. Rather it is a necessary regulation to prevent the inequitable result which would be involved in allowing the taxpayer a deduction for these unrealized profits. If plaintiff had continued to report its income for excess profits tax purposes under Section 44 it would now have no basis for claiming a deduction for losses on unrealized profits, as it would never have reported those profits as income and paid taxes on them. If plaintiff had been reporting on the accrual basis in the years before 1940 when it made these sales, and continued so to report, it would be entitled to deduct these losses, as it would have included its expected profits as accrued income in the year of the sales and paid taxes thereon. But in fact plaintiff never reported these expected profits as income for they were made in years for which its only report of income was made in accordance with Section 44. Even if these sums had been collected in full no excess profits tax would ever have been paid on them, for Section 736(a) expressly provides that such amounts shall not be included in determining income for the purposes of this tax. Now, however, plaintiff seeks the same deduction as would be proper for a taxpayer who had reported such profits on the accrual basis and been taxed thereon. Allowance of such a deduction is inequitable. The regulation which denies it is valid, and in conformity with Section 736(a). That section, while intended to afford relief to taxpayers by giving them the privilege of changing their method of reporting income, is not to be construed as permitting a taxpayer to claim the advantages of both methods without having been subjected to the disadvantages of either. May, Stern and Co. v. Commissioner, 5 T.C.M. 806; C.C.H. Dec. 15393 (M).

In determining the excess profits credit to be allowed to plaintiff the Commissioner has used the figures obtained by the use of the average income method set forth in 26 U.S.C.A. § 713. Plaintiff is, however, entitled to use the credit determined by the invested capital method of 26 U.S.C.A. § 714 if this gives a larger credit and thus results in a smaller tax. The credit as determined by the Commissioner by use of the invested capital method is less than that which both parties agree is the proper credit determined by use of the average income method. The Commissioner, however, refused to include in the average invested capital of the company its reserve for unrealized profits. If this reserve is included, as plaintiff contends it should be, it will result in a larger credit by use of the invested capital method not only for the tax year in question, but also for the plaintiff's tax years ending February 28, 1941 and February 29, 1944. The increased credit for the two last years mentioned will produce a larger carry-over and carry-back of unused credit which can be

---

1. "* * * The deduction for bad debts under Section 23(k) shall be allowed only with respect to specific debts. * * * If a debt reflected in instalment accounts receivable was created in a prior excess profits tax taxable year for which the income for excess profits tax purposes was computed upon the straight accrual basis or was recomputed upon the straight accrual basis pursuant to an election made under Section 736(a) and Section 35.736 (a)-2, and the total amount of the profit represented by such instalment accounts receivable was included in gross income for such year, the amount of the deduction for the bad debt shall be computed upon the straight accrual basis and shall not be limited to the unrecovered cost of the goods or article sold in consideration of such debt, but such limitation shall apply in all other cases."

applied to further reduce the amount of plaintiff's tax for its year ending February 28, 1942.

The reserve which plaintiff seeks to have included in its invested capital can best be considered as composed of two parts, the reserve for unrealized profits on sales since March 1, 1940, and that for sales previous to that date. So far as the reserve represents profits on sales since March 1, 1940, plaintiff is correct in its contention that it should be included in invested capital. Accumulated earnings and profits at the beginning of the year are to be included in equity invested capital. 26 U.S.C.A. § 718 (a) (4). There is nothing in the Code to indicate that earnings and profits under Section 718(a) (4) should not include those sums which are considered earnings and profits in determining the amount of excess profits net income. Having elected under Section 736(a) to report its profits as income when they accrued and not when they were collected in cash, taxpayer is entitled to have those same accrued but unrealized profits included in invested capital for the purpose of computing its credit. Kimbrell's Home Furnishings, Inc., v. Commissioner of Internal Revenue, 4 Cir., 159 F.2d 608. Defendant contends that this case is no longer authority since the decision in Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831. This seems also to have been the view of the Tax Court in J. L. Goodman Furniture Co. v. Commissioner, 11 T.C. 530, and other cases in which it has adhered to its ruling in the Goodman case. The South Texas case did not purport to overrule the Kimbrell case. The court in a footnote to its opinion, in 333 U.S. at page 499, 68 S.Ct. 695, 92 L.Ed. 831, referred to the Kimbrell case as having been decided on a contention not involved in the South Texas case. The South Texas Company had consistently reported income from installment

sales on the installment basis under 26 U.S.C.A. § 44, and had never elected under Section 736(a) to report such income on the accrual basis for excess profits tax purposes. It was held that it could not in computing its excess profits credit by the invested capital method include in its capital the "accumulated profits" from the installment sales made in previous tax years which it had never reported as taxable income for any tax purpose. In the instant case, as in the Kimbrell case, the income on sales in years beginning after December 31, 1939 has been reported as taxable income for excess profits tax purposes, and is properly included in equity invested capital in computing taxpayer's excess profits credit. Moreover, this seems to be the proper result under the applicable Treasury Regulation 112, Section 35.736 (a)–2, which appears in part in the margin.[2] The tax situation involved here falls within the exception provided in the regulation. Clearly, when taxpayer here changed to the accrual basis of reporting and reported as accrued taxable income the full contract price of its sales, including the amounts represented by its reserve for unrealized profits, those amounts were thereby reflected in the amount of its excess profits tax payable on the income thus reported, and were reflected therein only because of its election made under 736(a).

■ The situation is entirely different as to that portion of plaintiff's reserve for unrealized profits representing the profits on sales prior to March 1, 1940. Plaintiff at the beginning of the tax year here in question had never reported these profits as taxable income for any purpose. Under the provisions of Section 736(a) it would never have to include them as income for purposes of the excess profits tax. Under Treasury Regulation 122, Section 35.736(a)–2, these cannot be included in equity invested capital, for unlike profits on sales after February 29, 1940 they do not

2. "* * * If the taxpayer uses the excess profits credits based on invested capital pursuant to Section 714, the determination of accumulated earnings and profits shall be made without regard to any adjustment resulting from election made under Section 736(a) and this section, except as such election is reflected in the amount of income tax or excess profits tax payable for the taxable years beginning after December 31, 1939."

fall within the exception quoted above. As to these profits, plaintiff stands in the same position as the taxpayer in Commissioner of Internal Revenue v. South Texas Lumber Co., supra. Under the principles laid down in that case it cannot claim a credit for excess profits tax purposes based on profits of previous years which it has never reported as taxable income and will never be required to report as income for purposes of this tax. Section 736(a) should be liberally interpreted to grant to the taxpayer the advantages of the accrual basis coextensive with the burdens it has assumed by electing to report its income for certain purposes on that basis. But it should not be construed to give any undue advantage to taxpayer by allowing credits or deductions available to taxpayers reporting on the accrual basis insofar as these are based on transactions, the income from which has never been reported on the accrual basis.

■ Plaintiff in computing its Massachusetts state excise tax for its tax year ending February 28, 1942 was allowed a deduction of the full amount of federal excess profits tax paid. Reduction of the excess profits tax by a refund in accordance with this opinion will effect an increase in the amount of the tax to be paid to Massachusetts. In accordance with the stipulation of counsel, plaintiff will be allowed an additional deduction for the increased Massachusetts tax which it will have to pay.

■ In computing its federal income tax for its tax year ending February 28, 1942, plaintiff was allowed a similar deduction for excess profits tax paid. As a result of the reduction in the amount of the excess profits tax in accordance with this opinion, an additional amount will be due to the United States for its income tax for the year in question. The government contends that any judgment for the taxpayer in this action should be not for the full amount determined as an overpayment on its excess profits tax, but only for the difference between that overpayment and the amount which will become due to the government as an additional income tax payment. Taxpayer asks judgment for the full amount of the excess profits tax overpayment, with the question of additional income tax payments to be left for adjustment under 26 U.S.C.A. § 3807. An action for the recovery of taxes paid is in the nature of a common law action for money had and received and is governed by like equitable principles. Plaintiff must show that the United States holds moneys received from the taxpayer which it would be inequitable for it to retain. Here, even though the sums held were not due for the tax for which the payment was purportedly made and received, the government is entitled to retain so much of such sums as it could have rightfully collected as taxes from the plaintiff even though for a separate and distinct tax. Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293; Helvering v. Schine Chain Theatres, Inc., 2 Cir., 121 F.2d 948. And the government need not set up the other liability of the taxpayer to it as a set-off or counterclaim, but may merely set it up as an equitable reason why a full refund of the overpayment should not be granted. Ryan v. Alexander, 10 Cir., 118 F.2d 744, 748. Section 3807 merely provides for an extension of the statute of limitations in cases where a determination as to one tax results in an overpayment or deficiency in a related tax. This in no way requires that the government be compelled to hand over money admitted to be due to it, and then proceed to collect the same money back from the recipient.

The conclusion, therefore, is that plaintiff-taxpayer here is entitled to a refund of its overpayment of excess profits taxes for its taxable year ending February 28, 1942 in an amount to be determined by recomputing said tax including recomputation of excess profits credit carry-over or carry-back to allow (a) a deduction for losses on bad debts and repossessions arising out of sales made prior to March 1, 1940, but limited to the unrecovered cost of the merchandise sold; (b) the inclusion in equity invested capital for the purpose of computing the excess tax credit of so much of the plaintiff's reserve for unrealized profits at the beginning of each of its tax years as

represents profits on installment sales made after February 29, 1940; and (c) a deduction for such additional Massachusetts excise tax which becomes payable as a result of reduction of its excess profits tax; judgment to be for the amount of said refund less the amount by which plaintiff's income tax liability for said year is increased by virtue of the reduction of its excess profits tax.

Judgment for plaintiff in accordance with this opinion.