## MAY, STERN & CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9949.

United States Court of Appeals
Third Circuit.

Argued Jan. 20, 1950.

Decided April 10, 1950.

Charles MacLean, Jr., New York City (Louis Caplan, Pittsburgh, Pa., Laurence F. Casey, Ray I. Hardin, New York City, on the brief), for petitioner.

Irving I. Axelrad, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Helen Goodner, Special Assistants to the Attorney General, on the brief), for respondent.

Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is a petition to review a decision of the Tax Court[1] sustaining a determination by the Commissioner of Internal Revenue of a deficiency in the petitioner's excess profits tax for its taxable year ending January 31, 1941. The 31-day difference between the end of the calendar year and petitioner's taxable year is of no consequence in this case. For convenience, therefore, the taxable year in question will be designated as 1940 throughout this opinion.

Petitioner, May, Stern and Company, is a corporation engaged in the home furnishings business. It makes large numbers of installment sales. Its books of account and income tax returns have always been kept on the accrual basis, except that prior to the enactment of the excess profits tax law in 1940 it had elected to report its income from installment sales on the installment basis in accordance with § 44(a) of the Internal Revenue Code, 26 U.S.C.A. § 44(a). The installment basis is essentially a modified cash basis.[2]

In computing its liability under the excess profits tax law as enacted in 1940, petitioner was required to continue to report its income from installment sales on the installment basis. However, the Revenue Act of 1942 added § 736(a) to the Code, 26 U.S.C.A. § 736(a). Under its terms, taxpayers who had been reporting installment sales income under § 44(a) and whose installment sales volume had substantially decreased were given the election of reporting income from such sales on the accrual basis. But they were, if they chose to exercise the option, put under an attendant obligation to make retroactively certain ad-

1. 7 CCH 1948 TC Mem.Dec. 16,419.

2. 26 U.S.C.A. § 44(a), 52 Stat. 473 (1938) provides:
"Under regulations prescribed by the Commissioner * * * a person who regularly sells * * * personal property on the installment plan may return

as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price."

justments of their excess profits tax returns for 1940, and the subsequent years preceding this election, to conform therewith.[3]

In 1942, petitioner exercised the election under § 736(a) and accordingly filed an amended excess profits tax return for 1940. That amended return is the basis of this controversy.

One of the factors on which petitioner's excess profits tax liability depended was its excess profits credit properly computed as equal to eight per cent of its invested capital.[4] One of the components of its invested capital was petitioner's accumulated earnings and profits at the beginning of the taxable year.[5]

In its amended return for 1940, the taxpayer used the accrual method of accounting both for the computation of its taxable income from 1940 installments sales and for the computation of its income from past installment sales as that item entered into the earnings and profits component of its credit. This computation resulted in the inclusion of $1,297,745.79 of uncollected profits on pre-1940 installment sales in earnings and profits accumulated at the beginning of 1940. Relying on a Treasury Regulation [6] the Commissioner ruled that this

---

3. Internal Revenue Code § 736. "Relief for Installment Basis Taxpayers and taxpayers with Income from Long-Term Contracts

"(a) *Election to accrue income.* In the case of any taxpayer computing income from installment sales under the method provided by section 44 (a), if such taxpayer establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, that the average volume of credit extended to purchasers on the installment plan in the four taxable years preceding the first taxable year beginning after December 31, 1941, was more than 125 per centum of the volume of such credit extended to such purchasers in the taxable year, or the average outstanding installment accounts receivable at the end of each of the four taxable years preceding the first taxable year beginning after December 31, 1941, was more than 125 per centum of the amount of such accounts receivable at the end of the taxable year, or if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence, in either case including only such years for which the income was computed under the method provided in section 44 (a), it may elect, in its return for the taxable year, for the purposes of the tax imposed by this subchapter, to compute, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, its income from installment sales on the basis of the taxable period for which such income is accrued, in lieu of the basis provided by section 44 (a). Except as hereinafter provided, such election shall be irrevocable when once made and shall apply also to all subsequent taxable years, and the income from installment sales for each taxable year before the first year with respect to which the election is made but beginning after December 31, 1939, shall be adjusted for the purposes of this subchapter to conform to such election. In making such adjustments, no amount shall be included in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940. * * *"

4. The credit may be computed on the basis of the taxpayer's average earnings over a designated period, or on the basis of a return of 8% on the taxpayer's invested capital, whichever method results in the lesser tax. Int.Rev.Code § 712, 26 U.S. C.A. § 712.

5. Int.Rev.Code § 718, 26 U.S.C.A. § 718, defines the items which are included in equity invested capital. It includes "(4) * * * The accumulated earnings and profits as of the beginning of such taxable year." Accumulated earnings and profits are not defined in the excess profits subchapter, but § 728, 26 U.S.C.A. § 728, provides that "The terms used in this subchapter shall have the same meaning as when used in Chapter 1." The concept of earnings and profits is dealt with most relevantly in § 115, 26 U.S.C.A. § 115, as will appear later in this opinion.

6. U. S. Treas. Reg. 109, § 30.736 (a)-2 provides, in relevant part, as follows: "If the taxpayer uses the excess profits credit based on invested capital * * * the determination of accumulated earnings and profits shall be made without regard to any adjustment resulting from election made under section 736 (a) and this section, except as such election

inclusion was not proper and accordingly determined a deficiency in petitioner's 1940 excess profits tax. The Tax Court decided that the Commissioner was correct.

The propriety of that decision is the question before us.

I. For better understanding of the problem before the court, we consider first what legal impediments prevented this taxpayer from doing in its original excess profits tax return for 1940 that which it now seeks to do retroactively in an amended return after the 1942 enactment of § 736(a).

In its original return the petitioner reported income from installment sales on the installment basis. This had been done for normal tax income in years before the imposition of the excess profits tax. An attempt in 1940 to include uncollected installments of pre-1940 sales in accumulated earnings and profits and thus to compute the excess profits credit on the accrual basis would have been improper. It would have involved both the use of inconsistent accounting methods within the return itself and a violation of applicable statutes and regulations.

This in substance was the holding of the Supreme Court in Commissioner of Internal Revenue v. South Texas Co.[7] That decision sustained a Treasury Regulation which provided, in material parts, that " * * * the amount of the earnings and profits in any case will be dependent upon the method of accounting properly employed in computing net income. For instance * * * a corporation computing income on the installment basis as provided in § 44 shall, with respect to installment transactions, compute earnings and profits on such basis * * *."[8]

To uphold the regulation the court invoked the "long established congressional

policy that a taxpayer generally cannot compute income taxes by reporting annual income on a cash basis and deductions on an accrual basis," and stated explicitly that "such a practice has been uniformly held inadmissible because it results in a distorted picture which makes a tax return fail truly to reflect net income."[9]

The taxpayer had also urged that even if the application of the regulation resulted in consistent accounting, it could not be upheld. Section 115(l) of the Internal Revenue Code provided that: "Gain or loss * * * realized [by sale or other disposition of property] shall increase or decrease the earnings and profits to, but not beyond, the extent to which such a realized gain or loss was recognized in computing net income under the law applicable to the year in which such sale or disposition was made." It was argued that this section and the regulations thereunder meant that uncollected balances on installment sales entered into earnings and profits at the time of their recognition by law as gain, an eventuality which occurred—it was insisted—at the time of sale. And it therefore followed that the taxpayer's inclusion of these sums in his accumulated earnings and profits was proper.

The court disposed of this argument by construing § 115(l) in conjunction with § 44(a),[10] reasoning that § 44(a), under which the taxpayer reported annual income on the installment basis, effectively postponed recognition of deferred installment payments until the year when such items are reported as taxable income. It followed, of course, that the deferred payments could be included in earnings and profits only as they were received.

Thus the court found in § 115 (l) additional support for its conclusion that the

is reflected in the amount of income tax or excess profits tax payable for taxable years beginning after December 31, 1939."

7.  1947, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831.

8.  U. S. Treas. Reg. 103, § 19.115-3.

9.  333 U.S. 501, 68 S.Ct. 698, 92 L.Ed. 831. Note that the Supreme Court was

discussing consistency of accounting within a particular return. It was not, at this point in its opinion, discussing consistency between the computation of accumulated earnings and profits in one year and the accounting for that same gain as taxable income in some earlier taxable year.

10.  See note 2, supra.

regulation was valid by tieing the computation of earnings and profits for excess profits tax purposes to the recognition of those earnings for income tax purposes.

II. We now consider whether the enactment of § 736(a) and taxpayer's election thereunder removed the above analyzed objections to the inclusion of uncollected gain from pre-1940 installment sales in earnings and profits.

The argument for consistency of accounting method within a single return which, under the doctrine of the South Texas case, impeded the taxpayer before its election, now aids it. In conformity with the election under this section taxpayer, in its amended return, properly reported income from current installment sales on the accrual basis. More particularly, the aggregate amount of such income, including deferred installments which would not be collected until subsequent years, became excess profits taxable income for 1940.

In these circumstances the reasoning of the Supreme Court in the earlier part of the South Texas opinion and the language of the Treasury Regulation there considered are applicable. They clearly state the propriety, absent any statutory requirement to the contrary, of accounting in the amended 1940 return for accumulated earnings and profits as well as annual income on the accrual basis. It is only in this way that this adjustment to taxable income can be placed on the same basis as the computation of income, and the internal consistency of the return, so strongly emphasized in the South Texas case, can be achieved. Indeed, so forceful is the impact of the language and reasoning of the South Texas opinion on this point that it seems necessary to approve taxpayer's use of the accrual method in calculating earnings and profits from past installment sales unless some statutory prohibition necessitates disapproval.

The Commissioner contends that such prohibition is to be found both in the language of § 736(a) itself and in the language of § 115(l) as construed in the South Texas case.

His argument from the language of § 736(a) depends upon these two sentences: " * * * the income from installment sales for each taxable year before the first year with respect to which the election is made but beginning after December 31, 1939, shall be adjusted for the purposes of this subchapter to conform to such election. In making such adjustments, no amount shall be included in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940." He construes this language, in its application to taxpayer, as a prohibition against the inclusion of uncollected profits of pre-1940 installment sales in the computation of the excess profits credit for 1940. The Courts of Appeals for the Fifth and Ninth Circuits have accepted the Commissioner's view even since the argument of this appeal.[11]

We are unable to accept this construction. The second quoted sentence of § 736(a) refers explicitly and exclusively to the exclusion of amounts on account of pre-1940 installment sales from the computation of "excess profits net income" of subsequent years. In the statutory scheme for computing the excess profits tax, the excess profits credit is not a component of "excess profits net income" but rather an item to be subtracted from "excess profits net income" in order to arrive at "adjusted excess profits net income". The phrases "excess profits net income" and "adjusted excess profits net income" are artificial and each has precise meaning. It may not be assumed that in directing the method of computing a tax Congress would have employed the phrase "computing excess profits net income" if it had meant "computing adjusted excess profits net income".

Moreover, the word "included" as it appears in the phrase "no amount shall be included in computing excess profits net income" is itself a word of art. It connotes

11. Breuner v. Commissioner, 9 Cir., 1950, 179 F.2d 685; White Bros. Co. v. Commissioner, 5 Cir., 1950, 180 F.2d 451.

income items as distinguished from deductions. Commissioner of Internal Revenue v. Mackin Corp., 1 Cir., 1947, 164 F.2d 527. It does not, therefore, seem sound to argue that a reference to earnings and profits was intended.

It is also significant that the distortion of language urged by the Commissioner is not necessary to give reasonable meaning to the sentences under consideration. The Court of Appeals for the First Circuit has recently pointed out: " 'Bunching' the income of sellers of personal property on the installment plan during the war years * * * even the inevitable 'bunching' of the income of concerns in that business caused by the impact of the war economy upon them, was what Congress intended to relieve so far as excess profit taxes were concerned by the provision of § 736(a) * * * that taxpayers in adjusting their returns for excess profits tax taxable years prior to their election to change systems of accounting shall not include any amount 'in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940.' " [12]

The language, thus, is essentially remedial. It relieves the taxpayer who elects to report the full amount of current installment sales on the accrual basis from having further to swell his taxable income by including amounts on account of sales made before the imposition of the excess profits tax. We are unable to read any additional or different meaning into these words on which the Commissioner relies.

However, the argument of the Commissioner that § 115(*l*) prohibits the computation made by the taxpayer is more persuasive. That section provides that gain from installment sales shall increase earnings and profits only to the extent that such gain "was recognized in computing net income under the law applicable to the year in which such sale or disposition was made". In the South Texas case the Supreme Court adopted the premise, clear from the legislative history of § 115(*l*),[13] that this language

imposes a limitation upon the earnings and profits which may be included in the computation of the excess profits credit. Beyond that the Court reasoned that for the taxpayer who has reported income on the installment basis under § 44(a), uncollected balances of installment sales are recognized, not at the time of sale, but in the future when they are collected and reported as taxable income.

It is admitted that the items which the present taxpayer seeks to include in earnings and profits had never been reported as taxable income for either excess profits tax or normal income tax purposes. It follows, therefore, that § 115(*l*) as construed by the Supreme Court prohibits the inclusion of such items in earnings and profits accrued at the beginning of 1940.

We have considered the petitioner's contention first, that neither § 736(a) nor § 115 (*l*) expressly prohibits what it has done, and second, that § 736(a), properly construed, permits it. The petitioner relies upon the language that "it may elect, in its return for the taxable year, for the purpose of the tax imposed by this subchapter, to compute * * * its income from installment sales on the basis of the taxable period for which such income is accrued". It is argued that its "income from installment sales" need not be restricted to current income or to items reported technically as "income" in its return. It is said to be enough that income from past installment sales enters into a calculation—here the calculation of invested capital—which must be made in the return for the taxable year.

But even if the quoted language might, by itself, be construed to cover income from past installment sales used in computing earnings and profits and to authorize the computation of income for such purposes on the accrual basis, to this extent superseding and negating the requirements of § 115(*l*), the taxpayer does not solve its problem. The language on which it relies refers to returns beginning with the year in which a taxpayer elects to change from the installment to the accrual method of reporting

12. Commissioner of Internal Revenue v. Mackin Corp., supra, 530.

13. H.R.Rep.No.2894, 76th Cong., 3d Sess. 41 (1940).

installment sales. For this taxpayer that year was 1942. The preceding years are dealt with in the following sentence of § 736(a) providing that *"income from installment sales for each taxable year before the first year* with respect to which the election is made but beginning after December 31, 1939, *shall be adjusted* for the purposes of this subchapter to conform to such election". (Italics added.) This is more restrictive language than that of the preceding sentence. A time limit appears which is absent in the preceding sentence. It is only income from installment sales for 1940 and 1941 which is to be adjusted. In our view, income from installment sales for 1940 cannot reasonably be construed to include income from installment sales made before 1940 and reflected in the 1940 return solely as accrued earnings and profits.

Thus, we can not find in § 736(a) any direction either authorizing or prohibiting the use of uncollected profits of pre-1940 installment sales in the earnings and profits component of invested capital as determined at the beginning of 1940.

We are compelled, therefore, to adhere to our conclusion that § 115(*l*) is applicable. Consequently, just as before the enactment of § 736(a), we are controlled by the holding of the South Texas case that recognition for income tax purposes [14] is a condition precedent to the inclusion of receipts from installment sales in accumulated earnings and profits.[15]

Moreover, due respect to the force of the applicable regulation requires us to affirm the holding of the Tax Court. Cf. Commissioner of Internal Revenue v. South Texas Co., supra; Comissioner of Internal Revenue v. Wheeler, 1945, 324 U.S. 542, 65 S.Ct. 799, 89 L.Ed. 1166. In view of the indecisive nature of § 736(a), and of the authoritative construction given to § 115(*l*), we cannot conclude that a regulation requiring the computation of this taxpayer's accumulated earnings and profits on the installment basis is unreasonable.

The Court of Appeals for the Second Circuit [16] has recently examined the reasoning of the South Texas case. It concluded that the decision in that case permits the inclusion in accumulated earnings and profits for tax years beginning after the first excess profits tax year, of uncollected balances on installment sales made and reported as excess profits taxable income after the imposition of the excess profits tax, but before the tax year in question. It seems to have done so on the theory that the inclusion of these sums was necessary in order to give "full effect" to the enactment of § 736(a). In substance the court held that § 115(*l*) does not have to be construed quite literally. Even though § 115(*l*) refers to recognition in computing "net income", as a condition precedent to inclusion in earnings and profits, the court followed an earlier decision in the Fourth Circuit [17] in

14. We do not express judgment on the liberal construction of that rule in the Second Circuit which does not reach the problem of this case. See footnotes 16 and 17 infra.

15. An examination of the legislative history of this section neither justifies nor permits the inference that the statute was intended to be broader than we read it. It is true that the lobbyist who urged the necessity of the legislation at one point spoke of putting taxpayers on an "equal competitive" basis in connection with the excess profits tax *regardless* whether they had previously been on the installment or accrual basis. But even his presentation seems to have been concerned principally with the inequity for excess profits tax purposes of computa-

tions of income from installment sales on the installment basis. He pointed out that government credit regulations were causing the cash receipts in the excess profits tax years to be disproportionate, and that the further inclusion in income of sums representing receipts for pre-excess profits tax years was unfair and had no relation to the war-created excess. Hearings before House Ways and Means Committee on the Revenue Revision Bill of 1942, 77th Cong. 2d Sess. 1717, 1720–21; see H.R.Rep.No.2333, 77th Cong., 2d Sess. 26 (1942); Sen.Rep. No.1631, 77th Cong. 2d Sess. 207 (1942).

16. Busch's Kredit Jewelry Co. v. Commissioner, 1950, 179 F.2d 298.

17. Kimbrell's Home Furnishings v. Commissioner, 1947, 159 F.2d 908.

holding that recognition in computing "excess profits tax net income" is sufficient. The petitioner suggests here that we go further and hold that the inclusion in its excess profits credit of the uncollected balances on pre-1940 installment sales is necessary to give "full effect" to § 736(a).

In our view, the construction of the Second and Fourth Circuits represents the limit beyond which it is impossible to go without clear conflict with the authoritative analysis made by the Supreme Court. To go further would be tantamount to holding, without justification, that the reference to § 115($l$) was repealed by implication with the enactment of § 736(a).

III. We are keenly aware that the result we have reached requires inconsistent accounting in the taxpayer's 1940 return. In the language of the Supreme Court in the South Texas case, this "results in a distorted picture which makes a tax return fail truly to reflect net income" [333 U.S. 501, 68 S.Ct. 699]. This distortion becomes more apparent and more significant when the scheme of the excess profits tax is considered. Through the excess profits tax law, Congress sought to tax "excessive" income thought to have been caused by the wartime economy.[18] The law provides a relationship between invested capital and income which is apparently to be regarded as "normal". Income equal to 8% of the invested capital is accepted as "normal" and therefore only on income in excess of this percentage is the tax imposed. The invested capital is the economic base used to earn the income. This base would logically include uncollected profits on installment sales. Such enforceable and secured claims are valuable assets. They clearly would be helpful in determining the credit standing of the business. They are, in sum, unquestionably useful in producing the income of the business.

18. See, Note (1940) 54 Harv.L.Rev. 311, 316.

19. The theory on which it is assumed that computations of adjustments to income should be made on the same accounting basis as computations of income has not, to our knowledge, been made explicit.

The elimination of such items from the credit side of the taxpayer's computation after his income has been calculated on the accrual basis may impose serious hardship.[19] The fact that § 115($l$) requires such a result, at least during the period of transition from the installment to the accrual basis of reporting, may well have been overlooked by Congress. But advertently or inadvertently, Congress has allowed a situation to remain in which § 115($l$) is controlling. Remedial action is not within judicial power.

The decision of the Tax Court will be affirmed.

Apparently other courts dealing with the problem have thought that the proposition must be accepted as a matter of common sense. See Kimbrell's Home Furnishings v. Commissioner, supra; Busch's Kredit Jewelry v. Commissioner, supra.