COMMISSIONER OF INTERNAL REVENUE *v.* WHEELER ET AL., EXECUTORS, ET AL.

No. 354. Argued February 2, 1945.—Decided March 26, 1945.

*Mr. Bernard Chertcoff*, with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key, J. Louis Monarch* and *Walter J. Cummings, Jr.* were on the brief, for petitioner.

*Mr. Wm. Dwight Whitney*, with whom *Messrs. Roswell Magill* and *George G. Tyler* were on the brief, for the respondents.

MR. JUSTICE JACKSON delivered the opinion of the Court.

The Circuit Court of Appeals for the Ninth Circuit has held Section 501 (a) of the Second Revenue Act of 1940 to be unconstitutional.[1]  This of course called for grant of certiorari.[2]

Since our problem is not computation of a tax, the facts relevant to the issues in the five cases, consolidated on appeal, may be shortly stated.  In 1925, John H. Wheeler and his wife, Frances, organized under the laws of California the John H. Wheeler Company.  Then and thereafter they transferred an assortment of securities to it in exchange for shares of its common stock.  The securities had cost them $304,684.49 and at transfer had a fair market value of $491,800.  In exchange the Wheelers received 4,918 shares with a par value of $100 each.  No gain by them was recognized for income-tax purposes by reason of the exchange.  Cf. Int. Rev. Code § 112 (b) (5).

For purposes of determining its income-tax liability on subsequent disposition of the securities, the corporation was obliged to and did use as a cost base the cost of the securities to the transferors, $304,684.49.  Cf. Int. Rev. Code § 113 (a) (8).  But for its corporate accounting the corporation set up a cost of $491,800, market value at the

[1] 143 F. 2d 162.
[2] 323 U. S. 694.

time of acquisition in exchange for common stock of equal par value. The whole question in this case is which of these bases is to be used to compute, pursuant to § 112 (b) (7) (E) of the Revenue Act of 1938, 52 Stat. 447, 488, the amount of "earnings and profits" distributed as liquidating dividends. The Act of 1938, to induce corporate liquidations, permitted a qualified stockholder to elect postponement of a portion of the gain realized on a December 1938 liquidation and to be taxed, as for a dividend, on "so much of the gain as is not in excess of his ratable share of the earnings and profits of the corporation . . ." If the market-value basis is used for the securities acquired from the Wheelers and later sold, the operations of the Company showed a deficit on November 30, 1938, when the books were closed. If the cost-to-transferors basis is used, "earnings and profits" were distributed to respondents, the stockholders, in the amount of $132,813.48, as computed by the Commissioner.[3]

After considering the applicability of § 112 (b) (7), the stockholders duly dissolved the corporation and distributed its assets during December 1938. They elected to be taxed on the gains on their shares pursuant to § 112 (b) (7), and they reported, of course, according to the higher or market-value basis for the securities acquired and disposed of by the Company. The Commissioner asserted a deficiency based on the lower cost to the transferors. In explaining his determination he relied on § 501 (a) of the Second Revenue Act of 1940, 54 Stat. 974, 1004, which provides that earnings and profits on the sale or other disposition of property shall be determined by using the adjusted basis for determining gains and by recognizing such gains to the extent that they are recognized for computing net income, and on § 501 (c), which makes the provisions of § 501 (a) applicable to prior years.

---

[3] This was slightly modified by the Tax Court in an aspect not material here.

The Tax Court sustained the Commissioner.[4] It held § 501 (a) of the Act of 1940 a "complete answer" to taxpayers' contention, and it overruled their claim that if the section was applicable to increase their 1938 liability it was retroactive in contravention of the Fifth Amendment to the Constitution. The Circuit Court of Appeals agreed that the section was applicable, but held that such retroactivity rendered it unconstitutional.

Although the term "earnings and profits" has long been in the revenue acts, in connection with the definition of dividends, it has never been defined by the statutes [5] (except in so far as § 501 (a) of the Second Act of 1940 has now done so). But under the Revenue Act of 1934 and succeeding acts, the Commissioner dealt by regulation with that portion of the problem of definition relevant here. Article 115–3 of Treasury Regulations 101, promulgated under the 1938 Act, provided in part as follows: "Gains and losses within the purview of section 112 or corresponding provisions of prior Acts are brought into the earnings and profits at the time and to the extent such gains and losses are recognized under that section." [6] This regulation, if valid, disposes of the controversy, for when the corporation sold its securities acquired from the Wheelers it realized gain, based on transferor's cost, which was fully recognized under § 112.

The only reason to doubt the validity of the regulation is found in certain decisions of the Board of Tax Appeals and lower courts, mentioned in the Tax Court's opinion. Despite these adverse decisions, however, the Commis-

---

[4] 1 T. C. 640.

[5] See Paul, Selected Studies in Federal Taxation (Second Series, 1938) 149, 155 et seq.

[6] The provision appears in Reg. 94, Art. 115–3, under the Act of 1936; Reg. 86, Art. 115–1, under the Act of 1934; and in Reg. 103, § 19.115–3 and Reg. 111, § 29.115–3 under the Internal Revenue Code.

sioner persisted in applying the regulation. The question was never reviewed here. Before it was finally judicially considered, Congress enacted § 501 of the Second Revenue Act of 1940, as the committee reports show,[7] to "clarify the law" by enacting the substance of the regulation. But if the regulation itself was valid and effective, the clarifying amendment of 1940 added nothing to the liability of these taxpayers, and even though the Tax Court relied on it rather than on the regulation, no question of retroactivity is presented.

We think the regulation is reasonable and a valid exercise of the rule-making power. The taxpayers are insisting on using as a base for tax purposes a figure that in itself had no relation to taxation. It was no doubt permissible and perhaps the correct accounting, for determining earned surplus for dividends and such corporate purposes, for the corporation to set up its books on the market value of its property at the time of acquisition, which determined the value of the stock it issued. But "earnings and profits" in the tax sense, although it does not correspond exactly to taxable income, does not necessarily follow corporate accounting concepts either.[8] Congress has determined that in certain types of transaction the economic changes are not definitive enough to be given tax consequences, and has clearly provided that gains and losses on such transactions shall not be recognized for income-tax liability but shall be taken account of later. §§ 112, 113. It is sensible to carry through the theory in determining the tax effect of such transactions on earnings and profits. Compare *Commissioner* v. *Sansome,* 60 F. 2d 931, and see Sen. Rep. No. 2156, 74th Cong., 2d Sess., p. 19; H. R. Rep. No. 2894, 76th Cong., 3d Sess., p. 41. Indeed, Congress appears to have provided for this result in the statute

---

[7] See H. R. Rep. No. 2894, 76th Cong., 3d Sess., p. 41; Sen. Rep. No. 2114, 76th Cong., 3d Sess., p. 22.

[8] See 1 Mertens, Law of Federal Income Taxation (1942) § 9.33.

itself (§ 111 (c) of the 1938 Act), which declares: "In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized *for the purposes of this title,* shall be determined under the provisions of section 112." [9]   In this case, to be sure, there was no question of recognition of gain or loss to the corporation at the time of the exchange with the Wheelers, because it was issuing its own stock and so realized no gain or loss.  But to recognize the increment in value as affecting earnings and profits would no more harmonize with the taxless character of the transaction than to treat a realized gain as doing so.  The same policy which carries over the transferor's basis for purposes of the corporation's income tax (§ 113 (a) (8)) requires carrying it over for determining the taxability of its distributions, as the Commissioner's regulation directs: gains and losses are to be brought into earnings and profits at the time and "to the extent" that they are recognized under § 112.  Finally, no doubt of the reasonableness of the rule can linger in the presence of § 501 (a), by which Congress has indicated its express approval of the principle that the basis for determining earnings and profits shall be the basis for determining gain.

We therefore think that on principles often reiterated [10] the regulation is valid and decisive of this issue.  There is no necessity to predicate the determination of deficiency on the 1940 amendment.  The 1940 amendment conse-

---

[9] (Italics supplied.)   See Paul, Selected Studies in Federal Taxation (Second Series, 1938) 193–95.

[10] *Boske* v. *Comingore,* 177 U. S. 459, 470; *Brewster* v. *Gage,* 280 U. S. 327, 336; *United States* v. *Kirby Lumber Co.,* 284 U. S. 1, 3; *Fawcus Machine Co.* v. *United States,* 282 U. S. 375, 378.  It may also be noted that the regulation has the support of the doctrine that reenactment of the statute without disapproval of regulations thereunder gives them added sanction.   *United States* v. *Dakota-Montana Oil Co.,* 288 U. S. 459, 466; *Helvering* v. *Winmill,* 305 U. S. 79, 83; *Helvering* v. *Griffiths,* 318 U. S. 371, 395, 397.

quently has no retroactive effect on the liability of these taxpayers and the conclusion of the Court of Appeals that it is unconstitutional is not warranted. The judgment of the Court of Appeals is reversed and that of the Tax Court is affirmed.

*Reversed.*

MR. JUSTICE ROBERTS is of opinion the judgment should be affirmed for the reasons stated by the Circuit Court of Appeals, 143 F. 2d 162.