**WHITE BROS. CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 12699.

United States Court of Appeals
Fifth Circuit.

March 9, 1950.

Rehearing Denied April 10, 1950.

E. K. Tillman, New Orleans, La., for petitioner.

Melva M. Graney, Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles Oliphant, Chief Counsel, Bur. of Int. Rev., Washington, D. C., W. Herman Schwatka, Sp. Atty., Bur. Int. Rev., Washington, D. C., Carlton Fox, Sp. Asst. to Atty. Gen., for respondent.

Before HOLMES, McCORD, and BORAH, Circuit Judges.

HOLMES, Circuit Judge.

This petition for review involves a deficiency in declared value excess-profits taxes and excess profits taxes for the year 1943, also excess-profits taxes for the year 1944. The jurisdiction of this court is invoked under Section 1141(a) of the Internal Revenue Code, as amended by Section 36 of the Act of June 25, 1948, 26 U.S.C.A. § 1141(a). The taxpayer has abandoned the third of the three issues that

---

4. § 157 (1) (a), Title 8 U.S.C.A.

5. United States ex rel. McCann v. Thompson, 2 Cir., 144 F.2d 604, 156 A.L.R. 240.

it presented to the Tax Court. The facts were found by the Tax Court as stipulated by the parties, and may be summarized as follows:

In 1920, the taxpayer, a Louisiana corporation, elected to report its income on the installment basis, and did so in all subsequent years, filing its income-tax returns for 1943 and 1944 under such method as provided in Section 44(a) of the Internal Revenue Code, 26 U.S.C.A. § 44(a). Nevertheless, it elected to and did file its excess-profits tax returns for those years on the accrual basis under Section 736(a) of said code, 26 U.S.C.A. § 736(a). In its excess-profits tax return for 1943, the taxpayer claimed an excess-profits credit based on average earnings; but, in its claim for refund, it claimed such credit on invested capital, without objection on the part of the Commissioner.

The taxpayer and the Commissioner agreed that the sum of $284,706.75 was paid into the corporation as invested capital, but the Commissioner reduced the taxpayer's equity-invested capital in that amount by $104,105.80 on the ground that certain distributions made by the taxpayer as dividends in the calendar years 1921, 1922, 1923, 1924, and 1929 (aggregating $104,-105.80), were not made out of its "accumulated earnings and profits," but were made out of its capital. The taxpayer admits that these dividends were paid out of its capital unless its unrealized gross profits from installment sales in each of those years were includible in its accumulated earnings and profits. Our decision, therefore, as to this item of $104,105.80 depends upon whether said dividends were paid out of such profits as were includible in the taxpayer's "accumulated earnings and profits" within the meaning of Section 718(b)(1) of said code, 26 U.S.C.A. § 718 (b) (1).

■ To sustain its position, it is plain that the taxpayer needs to invoke and is invoking a statute that was not in existence in 1921, 1922, 1923, 1924, or 1929, and was not sufficiently retroactive to include those years: viz, 26 U.S.C.A. § 736(a). In its brief it says: "For the years 1943 and 1944

it elected to compute its excess profits tax on the accrual basis under said Section 736(a) of the Internal Revenue Code," citing the stipulation of facts. That section provides that, in making adjustments under it, no amount shall be included in computing excess profits net income for any excess-profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940. We think this provision excludes the years 1921 to 1929, inclusive.[1]

Commissioner v. South Texas Lumber Company, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831, is very much in point, although Section 736(a) was not mentioned and apparently was not involved therein. There also the taxpayer made its return on the installment basis, and contended that the uncollected income from its installment sales was realized in the year of sale; but the court held that such profits were not realized until collected and that, in addition, their recognition for income-tax purposes was required before they became a part of the taxpayer's accumulated earnings and profits within the meaning of the applicable statute. The cited case was decided in 1948; the liability in question was for the taxable year 1943, under the Excess Profits Act of 1940, as amended, 54 Stat. 975, 26 U.S.C.A. § 710 et seq.; and the court said that the taxpayer was permitted to include in its invested capital only that portion of its profits from installment payments which it had actually received and on which it had already paid income taxes in the years of receipt. See also Commissioner v. Wheeler, 324 U.S. 542, 65 S.Ct. 799, 89 L.Ed. 1166, as to when realized gains are taken into earnings and profits.

■ The remaining question in this case is whether sales taxes collected by the taxpayer from its customers, and not remitted by it to the state or municipality, were income to the taxpayer in 1943, when retained by it until its liability therefor had been prescribed by state law. The amount so collected and retained, we think, became a windfall in the hands of petitioner, and we see no reason why it should not pay in-

1. Cf. Brenner Company v. Com., 179 F.2d 685, decided Jan. 25, 1950.

come taxes thereon. The validity of the imposition and collection of these taxes is no longer questioned here. They were imposed and collected under a Louisiana statute that was repealed in 1940, without making any provision for their return to the vendees if not accounted for or remitted to the state or municipality by the vendor. Under Louisiana law, prescription not only bars the remedy against the vendor but vests title in it to the thing possessed or retained for the prescribed period. The basic fallacy of the petitioner's contention here, it seems to us, is that its customers from whom the items were collected had a right under state law to recover the taxes in the event the vendor failed to account therefor to the state or municipality. No such right appears to have been conferred upon them. Moreover, as the Tax Court pointed out, petitioner makes no contention that the taxing authorities could legally demand payment of the taxes after prescription had run. It argues that liability to refund the taxes to its customers continues for a period of ten years; but there is no showing as to who the customers were, whether their names are known, or of any fact to indicate any possibility of such refund being made, except that the amounts were collected and retained by the vendor. An all sufficient answer to the petitioner's contention is well put by the Tax Court as follows:

"There is no showing whether the customers had any legally enforceable right to have refunded the sales taxes which petitioner collected but did not remit to the taxing authorities. Mere reference to a 10-year prescription statute furnishes little or no assistance. There is no evidence whether petitioner's records indicate the names of the customers from whom the tax was collected, or the specific amounts collected, which would enable petitioner to make a voluntary refund, or which would permit the customer legally to establish that any part of the unremitted taxes included taxes which such particular customer had paid to petitioner. We think that if petitioner intended to rely upon the contention which it now advances, such facts should have been properly presented. There are

many cases in which persons have been taxed on property which could be recovered from them. Cf. Chicago, R. I. & P. R. Co. v. Commissioner [7 Cir.], 47 F.2d 990; National City Bank of New York, Exr. v. Helvering [2 Cir.], 98 F.2d 93; Universal, Inc. v. Commissioner [7 Cir.], 109 F.2d 616; Charleston & W. C. Ry. Co. v. Burnet [60 App.D.C. 192], 50 F.2d 342."

For the reasons above stated, the judgment of the Tax Court is

Affirmed.