**FIRST TRUST CO. OF ST. PAUL v. KELM,**
Collector of Internal Revenue.

Civ. 2028.

United States District Court
D. Minnesota, Third Division.

June 28, 1952.

668

Cleon Headley and David W. Raudenbush, St. Paul, Minn. (Morgan, Headley, Raudenbush & Morgan, St. Paul, Minn., of counsel), for plaintiff.

Philip Neville, U. S. Atty., Maurice Wolk, Special Asst. Atty. Gen., for defendant.

DONOVAN, District Judge.

Plaintiff commenced this action to recover a deficiency estate tax pursuant to a claim for refund. The facts are undisputed. In 1919 B. F. Paxton created a trust by the transfer of certain securities to the predecessor of the plaintiff trust company. Under the provisions of the trust instrument, the settlor was to receive the net income of the trust for life and on his death the corpus was to be paid over to his estate. The indenture contained the following reservation:

"The trustor reserves the broadest right to change, from time to time, the provisions of this instrument as to the disposition of the principal of the trust fund held thereunder, or the income therefrom, or both, after his death in such lawful ways as he may direct, by instrument in writing signed and acknowledged by the trustor and delivered by him during his life time to the trustee, the said Northwestern Trust Company; but reserving only the right to change the manner of its disposition after his death the trustor constitutes this an unalterable and irrevocable trust."

Paxton on two occasions exercised this reserved power to amend, once in 1922, and again in 1943. In the 1943 amendment, provisions were made for the distribution of the income and corpus, from and after the death of the settlor, among four nieces, their husbands and their children. This amendment was in force at Paxton's death.

Paxton died in 1946. The plaintiff trust company, as trustee, thereupon filed an estate tax return on behalf of the estate, but did not include in the gross estate the value of the securities constituting the original trust fund. Upon audit of the return the Commissioner of Internal Revenue included the original trust fund in the gross estate. A deficiency assessment was then made and was paid with interest by the taxpayer.

Following the enactment by Congress and the approval by the President of the Technical Changes Act of 1949 (63 Stat. 891), plaintiff filed a claim for refund of the net amount of the deficiency assessment. The defendant having taken no action during the next six months or more either to allow or disallow the claim, the present action was instituted.

It is admitted that in order for plaintiff to prevail, the transfer must fall within the provisions of Section 811(c) (1) (B) of the Internal Revenue Code, 26 U.S.C.A. § 811 (c) (1) (B), because the relief sought by plaintiff under the Technical Changes Act is expressly so limited.[1]

The matter is now before the court upon plaintiff's motion for partial summary judgment, and on defendant's cross-motion for summary judgment. All issues of fact alleged by the complaint are admitted in the answer; hence the instant case presents issues of law for decision. The precise issue for determination by the court is whether or not the estate has been relieved of tax liability for the corpus of the trust, by Sec-

1. "Section 7 [Act of October 25, 1949, c. 720, 63 Stat. 891, 894]

    *    *    *    *    *    *

"(b) The amendment made by subsection (a) shall be applicable with respect to estates of decedents dying after February 10, 1939. The provisions of section 811(c) of the Internal Revenue Code, as amended by subsection (a), shall (except as otherwise specifically provided in such section or in the following sentence) apply to transfers made on, before, or after February 26, 1926.

The provisions of section 811(c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1950, apply to—

(1) A transfer made prior to March 4, 1931; or

(2) A transfer made after March 3, 1931, and prior to June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931. (46 Stat. 1516). * * *"

tion 7(b) of the Technical Changes Act of 1949. Plaintiff contends that the trust corpus on March 20, 1919, has been relieved of estate tax liability by said Section 7(b) and that the governing statute is free from ambiguity. Plaintiff further contends that the transfer here was of the type included under the second clause of the joint resolution of March 3, 1931, which resolution, although not applicable at the time of the settlor's death in 1946, has now been made so by the Technical Changes Act, and comes within the exceptions therein provided. Defendant contends the relief provisions of said Section 7(b) are inapplicable, claiming that the present case comes squarely within the literal language of Section 811(d) (2) of the Internal Revenue Code, 26 U.S.C.A. § 811(d) (2), and alternatively argues that even if the court should find the transfer to be of the kind described in Section 811(c) (1)(B), the special relief provisions of the Technical Changes Act of 1949 have no application because of the power which the settlor retained to control the disposition of the trust income and corpus after his death. Section 811(c)(1)(B), under which plaintiff contends this transfer is controlled, had its origin in the joint resolution of March 3, 1931.[2]

Do the provisions of the Technical Changes Act of 1949 relieve the trust corpus of estate tax liability in the case at bar? It would appear that the purpose of the joint resolution was to offset the effect of the May v. Heiner doctrine[3], which had on the day preceding its adoption been followed by the Supreme Court in three per curiam opinions.[4] In 1938, the case of Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858, held that neither passage of the resolution nor its later inclusion in the 1932 Revenue Act was intended to apply to trusts created before its passage. The provisions of the resolution were thereby limited to trusts executed after March 3, 1931. Hence, logic suggests that trusts executed before March 4, 1931, in which the settlor irrevocably transferred the legal title, should not be included in the gross estate under Section 811(c). The May v. Heiner rationale was rejected by the Supreme Court in Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604. In 1949, the Supreme Court expressly overruled May v. Heiner in Commissioner v. Estate of Church, 335 U.S. 632, at page 651, 69 S.Ct. 322, at page 331, 93 L.Ed. 288, and held that the

"trust agreement, because it reserved a life income in the trust property, was intended to take effect in possession or enjoyment at the settlor's death and that the Commissioner therefore properly included the value of its corpus in the estate."

In order to toll the effect of the abandonment of the May v. Heiner doctrine on transfers falling within the purview of Section 811(c), the provisions of Section 7(b) were included in the Technical Changes Act of 1949.

Plaintiff urges that the proper construction of the wording of Section 811(c)(1) (B)(ii) must be read to include the reservation of a power to direct the manner of

2. "(c) * * *' To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, *including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or, (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom * * *."* [Italics supplied, indicating the additions made by the resolution to Section 302(c) of the Revenue Act of 1926.]

3. The Court held in this case, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, that the corpus of a trust transfer need not be included in the settlor's estate, under the possession and enjoyment provision of Section 811(c), even though the settlor has retained for himself a life income from the corpus because the legal title had passed irrevocably from the settlor at the time the trust was created.

4. Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412; McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413.

distribution after the death of the settlor. Counsel have cited no cases, and the court has found none, wherein the provisions of Section 811(c) have been held to apply to a transfer similar to the one now before the court.

 Ambiguity in the language of the statute justifies resort by the court to the pertinent committee reports and Treasury Regulations as an aid to construction. Obviously the primary purpose of Section 7(b) of the Act was to clarify the law and to provide relief for taxpayers whose pre-March 4, 1931, transfers had become taxable by the decision of the court in Commissioner v. Estate of Church, supra, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 [5]. The provisions of the Treasury Regulation interpreting Section 811(c) [6] make clear that transfers of the type now before the court are specifically excluded. These Regulations are a valid exercise of rule-making power, and must be sustained unless unreasonable or contrary to the statute.[7]

At the time of the transfer herein, Paxton merely gave up the physical control over the corpus of the trust for his lifetime. By the reservation in the trust indenture, he had at all times the power to designate the manner of distribution of the income or the principal of the corpus from and after his death. He could designate to whom the corpus should be distributed, either gratuitously or for consideration.

---

**5.** S.Rep.No.831, 81st Cong., 1st Sess., p. 7. (August 3, 1949.)

"* * * Since the rule has been changed by the Supreme Court in the Church opinion, your committee believes that the Congress should act to restore the estate tax law to what it was prior to the Church opinion.

\*　\*　\*　\*　\*　\*

"The amendment made to section 811 (c) by this section of the bill does not, however, similarly change the estate-tax treatment of a transfer made before March 4, 1931, in case the decedent retained both a life estate and some other right or interest in the transferred property. * * *"

**6.** 26 C.F.R. 81.19.

"The rights of designation described in section 811(c) (1) (B) include a reserved

---

In my opinion the transfer by Paxton is governed by said Section 811(d). There is nothing in the committee reports to suggest that the relief provisions of Section 7(b) of the Technical Changes Act of 1949 were intended to be applicable to any but those transfers held taxable in the Church opinion, supra. The situation in the case at bar is such that the Treasury Regulations must be followed as presumptively correct. [8]

Plaintiff's motion for summary judgment will be denied.

Defendant's motion for summary judgment will be granted.

It is so ordered.

power to designate the person or persons who shall, during the decedent's life or during any lesser period described in such section, receive the income from the transferred property or who shall, during any such period, possess or enjoy nonincome-producing property. Such rights of designation do not, however, include powers over the transferred property itself not affecting the enjoyment of the income during the decedent's life."

**7.** Commissioner v. South Texas Co., 333 U. S. 496, 68 S.Ct. 695, 92 L.Ed. 831; Commissioner v. Wheeler, 324 U.S. 542, 65 S. Ct. 799, 89 L.Ed. 1166; Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212.

**8.** Welch v. Helvering, Commissioner, 290 U.S. 111, 54 S.Ct. 8, supra.