SIDNEY STARK AND SADIE STARK, PETITIONERS, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 57701. Filed October 28, 1957.

*Sidney B. Gambill, Esq.*, for the petitioners.
*George J. Rabil, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* The Commissioner has determined deficiencies and
additions to the tax for fraud, as follows:

| Year | Deficiencies in income tax | Additions to the tax, sec. 293 (b), I. R. C. 1939 |
|---|---|---|
| 1948 | $67,382.96 | $33,691.48 |
| 1949 | 84,878.38 | 42,439.19 |

The deficiency for 1948 is due principally to one adjustment. That
adjustment is "(a) Dividends $109,875.53." The deficiency notice
explains that adjustment as follows:

(a) It is determined that the amount of $109,875.53, as detailed in the follow-
ing, represents checks and/or cash diverted to the personal use of the taxpayer
and fully taxable as dividend income: [Here follows a statement of checks and
cash which were the property of Penn Overall Supply Company, Inc., which were
paid to Sidney Stark and which aggregate $109,875.53 in the year 1948.]

The deficiency for 1949 is due mainly to a similar adjustment as
above, viz, "(a) Dividends $134,687.94." The deficiency notice ex-
plains the adjustment in the same manner as the similar adjustment
for 1948 was explained.

The assignment of error as to 1948 is as follows:

(a) The respondent erred in determining that $109,875.53 received by the
petitioner, Sidney Stark, as a dividend from Penn Overall Supply Company con-
stituted taxable income.

A similar assignment of error, except as to amount, is made for the year 1949.

Respondent in an amended answer asks for increased deficiencies in income tax for the taxable years 1948 and 1949 in the respective amounts of $6,997.56 and $8,238.28, and for increased additions to the tax under section 293 (b) of the 1939 Code for the taxable years 1948 and 1949 in the respective amounts of $3,498.78 and $4,119.14.

All the facts have been stipulated and the stipulation of facts is incorporated by reference.

The following is a summary of the facts deemed to be necessary for a decision of the issues which we have here to decide.

The petitioners are husband and wife having an office in Pittsburgh, Pennsylvania. They filed timely joint Federal income tax returns for the calendar years 1948 and 1949 with the collector of internal revenue for the twenty-third collection district of Pennsylvania. They kept their books and filed their tax returns on the cash receipts and disbursements method and on a calendar year basis.

Penn Overall Supply Company, Inc. (hereinafter sometimes referred to as Penn Overall), was incorporated under the laws of the Commonwealth of Pennsylvania in 1931. Since its incorporation it has conducted an industrial laundry business in Pittsburgh and surrounding territory. Its business has consisted principally of cleaning and supplying overalls, coveralls, towels, and wiping cloths. Penn Overall, for all periods material hereto, kept its books and filed its Federal income tax returns on a calendar year basis and on an accrual method of accounting.

In April 1940, Sidney Stark, hereinafter sometimes referred to as petitioner or Sidney, one of the petitioners herein, became a shareholder of Penn Overall and at that time was elected vice president and treasurer. The outstanding stock of Penn Overall, after Sidney's acquisition, was owned by him, Sam Kalb, and American Coat & Apron Supply Company, a corporation, each owning approximately one-third.

During the year 1947, Sidney purchased all of the outstanding stock of Sam Kalb; and Sidney's sons, William Stark and J. Karl Stark, purchased all of the Penn Overall stock owned by American Coat & Apron Supply Company.

The stockholdings in Penn Overall remained in effect from January 30, 1947, through the taxable year ended December 31, 1949. Immediately after January 30, 1947, Sidney was elected president; William Stark, Sidney's son, was elected vice president; and J. Karl Stark, also Sidney's son, was elected secretary and treasurer. Those individuals were also elected directors of the corporation and have since comprised the corporation's board of directors. During the

taxable years 1948 and 1949, Sidney controlled the activities of Penn Overall.

In the case of *Penn Overall Supply Company, Inc.*, Docket No. 57696, the parties, simultaneously with the filing of the stipulation of facts in the present proceeding, filed with the Court a stipulation of settlement setting forth the following deficiencies and additions to the tax, as follows:

| Year | Deficiencies in income tax | Additions to the tax, sec. 293 (b), I. R. C. 1939 |
| --- | --- | --- |
| 1946 | $6, 250. 60 | $3, 125. 30 |
| 1947 | 28, 319. 59 | 17, 018. 87 |
| 1948 | 17, 618. 91 | 37, 158. 53 |
| 1949 | 12, 934. 08 | 6, 467. 04 |

The deficiencies and additions to tax shown in the foregoing stipulation arose largely by reason of diversions of income of Penn Overall to Sidney. The Tax Court entered its decision in accordance with the stipulation of the parties, March 29, 1957.

The following schedules show the amounts of unreported income of Penn Overall for the calendar years 1948 and 1949, which were diverted to Sidney and George Kalb, determined on the accrual method of accounting, and the amounts of unreported income received by Sidney from Penn Overall for his use and benefit, determined on the cash receipts and disbursements method of accounting:

UNREPORTED INCOME OF PENN OVERALL ON ACCRUAL METHOD OF ACCOUNTING

| Year | Amount |
| --- | --- |
| 1948 | $159, 363. 86 |
| 1949 | 81, 685. 48 |

AMOUNT OF DIVERTED CORPORATE INCOME RECEIVED BY SIDNEY STARK, COMPUTED ON THE CASH RECEIPTS AND DISBURSEMENTS METHOD OF ACCOUNTING

| Year | Amount |
| --- | --- |
| 1948 | $122, 275. 53 |
| 1949 | 147, 310. 44 |

Of the unreported distributions of $122,275.53 in 1948, $35,286.63 pertained to funds diverted from Penn Overall during 1947 and it is agreed that such funds are fully taxable. The remainder of the funds, namely, $86,988.90, pertained to funds diverted from Penn Overall during 1948.

Of the unreported distributions of $147,310.44 in 1949, $3,500 pertained to funds diverted from Penn Overall during 1947 and it is agreed that this amount is fully taxable; $65,624.96 pertained to funds diverted from Penn Overall during 1948; and $78,185.48 pertained to funds diverted from Penn Overall during 1949.

The accumulated earnings of Penn Overall at the beginning of 1946 (accumulated since March 1913) and the earnings of the corpora-

tion for the calendar years 1946, 1947, 1948, and 1949, without regard to any deductions for additions to tax or interest on deficiencies stipulated in the case of *Penn Overall* and upon which decision (regarding such deficiencies and additions to tax) has already been entered, were as follows:

| | 1946 | 1947 | 1948 | 1949 |
|---|---|---|---|---|
| Accumulated earnings at Jan. 1, 1946 | $29,800.51 | | | |
| Corrected taxable net income for year | 31,719.09 | $99,533.29 | $208,387.62 | $156,611.62 |
| Less: | | | | |
| Corrected Federal income tax | 8,851.55 | 37,546.40 | 79,187.30 | 59,396.02 |
| Life insurance premiums on lives of officers | 3,564.50 | 3,037.50 | 3,007.00 | 3,404.00 |
| Capital gains adjustment | 384.79 | | | |
| Disallowed advertising expenses | 484.00 | 453.00 | 492.70 | 895.08 |
| Disallowed selling expenses | 1,297.00 | 450.00 | 1,100.00 | 1,210.00 |
| Unallowable contributions | 1,821.27 | | | |
| Disallowed automobile expense | | 1,725.21 | 3,738.27 | 3,265.63 |
| Balance, current year's earnings | 15,315.98 | 56,321.18 | 120,862.35 | 88,440.89 |
| Less: | | | | |
| Regular dividends paid | 4,410.00 | 4,310.00 | 6,565.00 | 6,315.00 |
| Corporate income diverted to shareholders | 19,660.43 | 61,469.88 | 159,363.86 | 81,685.48 |
| Balance—without regard to beginning earned surplus | (8,754.45) | (9,458.70) | (45,066.51) | 440.41 |

A part of the deficiency in income taxes due from the petitioners for each of the taxable years ended December 31, 1948 and 1949, was due to fraud with intent to evade and defeat tax on the part of Sidney, one of the petitioners. There was no fraud or intent to evade and defeat tax on the part of Sadie Stark, the other petitioner. However, it is agreed that both petitioners are jointly and severally liable for the payment of any deficiencies and additions to tax which may be due and owing.

Sidney's stock had a cost to him in excess of $125,000.

Penn Overall's original returns for the taxable years 1946, 1947, 1948, and 1949 were filed on March 15, 1947, 1948, 1949, and June 15, 1950, respectively (the 1949 return having been filed pursuant to an extension).

Some more or less minor issues raised by the pleadings have been settled by the stipulation of the parties. The settlement of these adjustments will be given effect under Rule 50.

Petitioner Sidney Stark, a shareholder of Penn Overall, diverted funds of Penn Overall in 1948 and 1949. The funds diverted constitute distributions from Penn Overall to Sidney. These distributions are dividends and taxable as ordinary income to the extent of the earnings and profits of Penn Overall. This much Sidney concedes. The problem here involves a determination of the earnings and profits of Penn Overall. The parties have stipulated the amounts representing Penn Overall's accumulated earnings and profits at January 1, 1946,

and its current earnings and profits without regard to deductions for additions to the tax for fraud or interest on deficiencies for the years 1946 to 1949, inclusive.

At the time of the hearing of this proceeding two issues remained unsettled after the filing of the stipulation. Those two issues were:

(1) Should additions to tax for fraud from the time fraudulent corporate returns are filed be accrued as deductions in computing the corporation's accumulated and current earnings for the purpose of determining the portions of distributions to a shareholder which are returns of capital and which are taxable as ordinary dividends?

(2) Whether, in determining the amounts of corporate earnings and profits available for dividends in any taxable year, interest on deficiencies determined in 1957 but for prior taxable years 1946 to 1949, inclusive, should be annually accrued even though these deficiencies are litigated subsequent to the ends of the taxable years involved, as petitioners contend, or whether none of the interest on such deficiencies can be accrued against earnings and profits until the litigation is finally determined, as the Commissioner contends?

Issue 1 named above was decided by us in favor of the contentions now being made by the petitioners in *Estate of Esther M. Stein*, 25 T. C. 940, on appeal (C. A. 2). The Commissioner acquiesced in that decision insofar as the accrual of additions to tax for fraud were involved. See Rev. Rul. 57–332, 1957–2 C. B. 231. The Commissioner in his brief now concedes that he erred as to the time of accrual of the additions to tax under section 293 (b), I. R. C. 1939. Following this concession by respondent and our decision in the *Stein* case, *supra*, issue 1 is decided in favor of petitioners.

This leaves for our decision issue 2. Both parties state that this issue is one of first impression. Respondent cites several cases in which it has been held that interest owing by a taxpayer, who has been contesting his liability for deficiencies for tax, can only be accrued as income tax deductions in the year when the litigation or contest has been concluded and that the taxpayer cannot relate the deductions back to other years. Respondent cites in support of his contention such cases as *H. E. Harman Coal Corporation*, 16 T. C. 787, and *Lehigh Valley Railroad Co.*, 12 T. C. 977. These cases do support respondent's contention as to the accrual of interest on contested deficiencies when it comes to taking the interest as a deduction in determining net taxable income. But that is not the question we have here to decide. If we had Penn Overall before us claiming a deduction for income tax purposes of interest on the deficiencies which have been determined by us in our decision entered March 29, 1957, we would undoubtedly hold under the two above-cited cases and others

of like import that all the interest on such deficiencies accrued in 1957. However, that is not the question which we have before us.

The question that we have to decide is when the interest on these deficiencies should be accrued for the purpose of computing the accumulated and current earnings and profits of Penn Overall for the purpose of determining what portion of conceded distributions to petitioner Sidney Stark is out of earnings and what portion is out of capital. That, of course, is an entirely different question from the question as to what year the interest would be accruable for the purpose of determining the taxable net income of the corporation. Petitioners earnestly contend that the interest on these deficiencies for the purpose of determining net profits available for distribution accrues ratably in each year and should be so treated by the Commissioner. On the other hand, as we have already stated, respondent contends that for the purpose stated the year of accrual for the entire amount of interest due on such deficiencies should be 1957, the year when our decision was entered which definitely determined the amounts of deficiencies against Penn Overall for 1946 to 1949, inclusive.

We think our decision in *Estate of Esther M. Stein, supra*, throws light on what our decision on the issue should be. In that case we said (25 T. C. at 966) :

Here, * * * it is important to calculate earnings and profits which "show the true financial status of an accrual basis taxpayer" in order that distributions which actually impair capital will not be taxed as dividends. To accomplish this the accrual basis taxpayer's true tax liability must be considered, whether or not such taxpayer is aware of, or agrees to, such liability.

* * * clearly earnings and profits will only "show the true financial status of an accrual basis taxpayer" where additions to the tax (such as that for fraud) for which the taxpayer is actually liable at the time of the computation (though the taxpayer does not concede liability) are also reflected in the computation. * * *

We must next determine when an accrual basis taxpayer's liability for a fraud addition first arises, since that is the time it "accrues" (whether or not contested) for purposes of computing earnings and profits. We think such liability arises when all the events determining it have occurred, [citing cases]. * * *

Here, we must determine when the liability for interest arises. The liability for the total amount of interest on the deficiency, unlike the additions for fraud, does not arise at a particular point of time. Interest on indebtedness means compensation for the use or forbearance of money. See *Deputy* v. *duPont*, 308 U. S. 488, 498 (1940). It accumulates (at a certain rate, here 6 per cent per annum) over the period of use or forbearance of the money. "To a taxpayer on the accrual basis interest accrues ratably and the date of payment is immaterial." *J. B. Jemison*, 18 B. T. A. 399, 404 (1929).

Applied to the facts here involved, Penn Overall, in computing its earnings and profits, should deduct at the end of each year the interest accumulated and accrued during that year. For example, there is a deficiency in Penn Overall's 1946 tax which became due in 1947. In computing the earnings and profits at the end of 1947, it, being on an accrual basis, must deduct the interest accrued from the due date of the tax until the end of the year. In computing the earnings and profits at the end of 1948, it would deduct the interest accrued from the beginning of the year until the end of the year, etc. Such, as we understand it, is petitioner's argument and we agree with it.

As we have stated, we understand that the petitioner is contending that the interest should be ratably accrued and not that it should be accrued in one lump sum in the year for which the deficiency is imposed. Any contention based on the latter is answered by what we said in *Stein, supra*, when, commenting on the taxpayer's contention that the addition to the tax for fraud should be accrued in the same year as the deficiency, rather than the year in which the fraudulent act was committed, viz, the year in which the fraudulent return was filed, we said (25 T. C. at 967) : "Since the fraudulent act is not committed until the return is filed, approving petitioners' contention would result in accrual of the fraud addition retroactively (to the end of the preceding year). That, we think, cannot be done."

The respondent argues that a double deduction from earnings and profits will result if a deduction in computing earnings and profits is allowed prior to the deduction in computing net income, which, in the instant case, would be 1957. We disagree. It has been recognized that earnings and profits in the tax sense do not necessarily correspond to taxable income nor do they necessarily follow corporate accounting concepts. See *Commissioner* v. *Wheeler*, 324 U. S. 542, 546 (1945).

In line with what we have said above, our holding on this issue as to when interest should be accrued on the deficiencies of Penn Overall for 1946 to 1949, inclusive, for the purpose of determining earnings and profits of Penn Overall available for dividend distribution to its stockholders, including petitioner, is that the interest should be accrued ratably each year as it became due. The date of Penn Overall's actual accrual of the interest for purposes of determining net taxable income, following our decision of March 29, 1957, in our judgment, has nothing to do with the issue we have here. It is immaterial.

*Decision will be entered under Rule 50.*