**Mac ROHDE, a/k/a Max Ralph Rohde, a/k/a Mack Rohde, Appellant,**

v.

**UNITED STATES of America,** Appellee.

No. 22834.

United States Court of Appeals Ninth Circuit.

Aug. 29, 1969.

William H. Deck (argued), of Deck & Davies, A. Lee Fentress, Washington, D. C., Kindel & Anderson, Los Angeles, Cal., for appellant.

Francis X. Grossi, Jr. (argued), Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Elmer J. Kelsey, Stephen H. Hutzelman, Attys., Dept. of Justice, Washington, D. C., of counsel, Wm. Matthew Byrne, Jr., U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before ELY and HUFSTEDLER, Circuit Judges, and SOLOMON, District Judge.*

HUFSTEDLER, Circuit Judge:

The District Court granted a summary judgment for the Government in this action to foreclose tax liens and to recover taxes assessed on June 8, 1956. The sole question on the taxpayer's appeal is: Was the taxpayer's waiver of the 6-year statute of limitations effective without the signature of the District Director upon the waiver, under the provisions of Section 6502(a) of the Internal Revenue Code of 1954?

Section 6502(a) provides that a proceeding for collection of federal taxes must be "begun—(1) within 6 years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period * * *." The action is barred unless there was an effective agreement in writing within the meaning of the second clause of Section 6502 (a), because the complaint was not filed until December 10, 1963.

On June 24, 1960, the taxpayer executed Internal Revenue Service Form 656–C entitled "Offer in Compromise" and submitted the form to the District Director in New York. The form included the following provision:

"[T]he proponent hereby expressly waives: * * * 2. The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to that suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending or the period during which any installment remains unpaid, and for 1 year thereafter."

The form contained a signature line for the proponent which was signed by the taxpayer. The form further contained the following:

"Waiver of statutory period of limitations is hereby accepted, and offer will be considered and acted upon in due course.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
*Commissioner of Internal Revenue*
By

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
*District Director of Internal Revenue*"

No signatures were written by the Commissioner or the District Director

---

\* Honorable Gus J. Solomon, United States District Judge, Portland, Oregon, sitting by designation.

on the signature lines provided on the Government's form. On May 2, 1961, before the Government had accepted or rejected the offer in compromise, the taxpayer withdrew his offer.

The taxpayer contends that the waiver never became effective because neither the Commissioner nor the District Director signed the form as he was required to do by Section 6502(a). The Government contends to the contrary, relying primarily upon our decisions in Holbrook v. United States (1960) 9 Cir., 284 F.2d 747 and Commissioner of Internal Revenue v. Hind (1931) 9 Cir., 52 F.2d 1075.[1]

There are several features of the present case, to be discussed shortly, which distinguish it from *Holbrook* and *Hind*. We would nevertheless be constrained to follow the reasoning in *Holbrook* and *Hind* were it persuasive here.

*Holbrook* and *Hind,* interpreting respectively Section 276(c) of the Internal Revenue Code of 1939 and Section 250 (d) of the Revenue Act of 1921, held that the failure of the Commissioner to sign the taxpayer's waiver did not destroy the validity of the waiver. The court assumed that the statutory language referring to an agreement in writing between the taxpayer and the Government contemplated the signing of the waiver by both parties. It reasoned that a waiver is not a contract, but a unilateral relinquishment of a defense; that the statutory provision requiring the Commissioner's assent was directory, rather than mandatory; that neither the rights of the taxpayer nor the interests of the public would be adversely affected by the Commissioner's failure to observe the statutory direction; therefore, the waiver was effective despite the lack of the Commissioner's written assent.

The force of the *Holbrook* and *Hind* rationale is not overpowering. A waiver is not a contract,[2] but that characterization does not assist in interpreting the statute. The problem word is not "waiver" ; it is "agreement." The question is: Did Congress in using the word "agreement" intend that the Commissioner affirmatively assent to the waiver before it became effective? Affixing the label "directory" to a statutory provision which is not cast in either mandatory or permissive terms is a statement of a conclusion, rather than a reason for the result. Finally, the reference to the taxpayer's "rights" and to the interests of the public adds nothing to the analysis. Limitations provisions are not concerned with "rights," but with remedies. The public policy expressed in limitations statutes is the interest in avoiding state claims, whether these claims are for taxes or for something else. The existence or non-existence of an effective

1. The Government recognizes that the Circuits have divided on the question of the effectiveness of a waiver unsigned by the appropriate Government agent. A number of cases contrary to this Circuit's decisions in *Holbrook* and *Hind* are discussed in the *Holbrook* opinion. Since the latter decision, the Second Circuit by way of dicta in Lesser v. United States (1966) 368 F.2d 306, has expressed its inclination toward the *Holbrook* view. A similar split exists in respect of the validity of an assessment waiver to which the Government has not given written assent. (*Compare* McCarthy Co. v. Commissioner of Internal Revenue (9th Cir. 1936) 80 F.2d 618 *with* United States v. Bertelsen & Petersen Engineering Co. (1st Cir. 1938) 95 F.2d 867, aff'd on another issue (1939) 306 U.S. 276, 59 S.Ct. 541, 83 L.Ed. 647.)

2. The Government seeks nourishment from Florsheim Brothers Drygoods Co., Ltd. v. United States (1929) 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542, upon which *Holbrook* and *Hind* heavily relied. In *Florsheim* the Commissioner had signed the taxpayer's waiver, and the taxpayer contended that a contract had thus been formed binding the Commissioner not to make the assessments and collection after the periods the taxpayer had set in framing its waiver. The Court rejected the taxpayer's contentions. To the extent that *Florsheim* contains implications relevant to the question here posed, it is authority against the Government's position, because the Court discussed reasons why assent to the waiver by the Commissioner was desirable, although that assent did not create a contract. (280 U.S. at 466–467, 50 S.Ct. at 219–220.)

waiver depends on Congress' intent and not upon how one definition or another may work to the Government's benefit or detriment in any particular case.

Because we are able to distinguish *Holbrook* and *Hind* from the present case, we decline the taxpayer's invitation to overrule them. We also decline the Government's invitation to extend these cases to the facts here presented.

. In the earlier cases the court dealt with the validity of a waiver unaccompanied by an offer in compromise. Here we have a waiver submitted by the taxpayer on a form supplied by the Government which was a part of an offer in compromise. *Holbrook* itself recognized that a waiver submitted as a part of an offer in compromise did not present questions identical to those involved in the submission of a waiver alone. (284 F.2d at 753.) Compromises of tax liability are encouraged in appropriate cases. The Government needs time in which to consider such offers and to decide whether to accept or to reject them. The filing of an offer in compromise alone does not automatically toll limitations or stay the collection of any tax liability. (See, e. g. Treas.Reg. 301.-7122–1(d) (2), 301.7122–1(f).) In absence of some means to fix with precision the point in time at which limitations is tolled, serious questions about the vitality of offers in compromise may be raised, and the utility of such offers may be impaired. (See, e. g. United States v. White (E.D.Ark.1964) 17 A.F. T.R.2d 740.)

The event which fixes the effective date of a waiver could have been the unilateral act of the taxpayer in signing the waiver, but the statute does not say that. The statute requires an "agreement" of the taxpayer and the Government. True "agreement" does not mean "contract" in this setting. It means expressed assent. But the statute is still unclear about the effect which the lack of expressed assent has upon the validity of the waiver. That ambiguity is resolved by Treasury Regulation 301.6502(a) (2) (i) promulgated in 1956, which provides in pertinent part as follows: "Collection after assessment (a) Length of Period— * * * (2) Extension by agreement. (i) The 6-year period of limitation on collection after assessment of any tax may, prior to the expiration thereof, be extended for any period of time agreed upon in writing by the taxpayer and the district director. *The extension shall become effective upon execution of the agreement by both the taxpayer and the district director.*" The italicized sentence has no counterpart in the prior regulations. It was not considered in *Holbrook* or *Hind.*

■ The Treasury Department could not have chosen plainer words to state that the event which makes the waiver operative is the signature of the District Director. It is his act in signing the waiver that stops the limitations clock.

■ The Government says that we should not read the word "execution" used in the Regulation to mean "signed" by the District Director, because "execution" sometimes means "performance." Of course it does. "Execution" also sometimes means "being put to death." The meaning of the word depends on the context in which it is used. In the context of the Regulation, "upon execution of the agreement by both the taxpayer and the district director," the word means "signed;" there is nothing for either the director or the taxpayer to "perform." That the Treasury Department construes "execution" as "signed" is evidenced by the very form provided by the Government to the taxpayer in this case. It recites acceptance of the waiver by the Commissioner's delegate, states that the offer in compromise will be considered, and provides a signature line for the Commissioner's delegate.

■ The Regulation reflects the considered administrative interpretation of the statute, and it is entitled to respect. (Kaiser Steel Corp. v. United States (9th Cir. 1969) 411 F.2d 335.) We see no

reason not to accept that interpretation. The Regulation does not attempt to add something to the statute which is not there. (Compare United States v. Calamaro (1957) 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394.) We think that the Regulation is a reasonable and valid exercise of the rule-making power. (Commissioner of Internal Revenue v. Wheeler (1945) 324 U.S. 542, 65 S.Ct. 799, 89 L.Ed. 1166.)

Finally, the Government contends that the failure of the District Director to sign the waiver has no consequence because the statute and the Regulation simply affect internal administrative procedure. To read the statutory requirement as a congressional suggestion to the Treasury Department about how it should handle its internal administrative procedures strikes us as unrealistic. The net effect of the Government's interpretation is to read the provision out of the statute and the second sentence out of the Regulation.

The search for the intent of Congress in enacting and reenacting this statutory language is admittedly illusive, where, as here, the statutory history is written on a blank page. But we can perceive reasons for the requirement which are more persuasive than an assumed congressional concern for internal administrative detail. By withholding his signature the District Director can avoid any appearance of consent to the terms of a waiver drafted by the taxpayer. He, and not the taxpayer, controls the event which tolls limitations when an offer in compromise is submitted.

No plausible explanation is made for the promulgation of the Regulation or for the drafting of form 656–C unless both acts were intended to implement a statutory command and to provide guidance to the taxpayer as well as to the Commissioner. We attribute greater significance to a Treasury Regulation than to treat it as an intradepartmental memorandum.

The judgment is reversed.