**UNITED STATES of America**
v.
**Thomas S. LEE et al.**
**Civ. A. No. 69–2990.**

United States District Court,
E. D. Pennsylvania.
Oct. 28, 1971.

---

12. The case did in fact involve Admiralty Rule 58. The rule, however, is a carbon copy of Rule 56, Fed.R.Civ.P.

Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., Theodore B. Stolman, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

Robert M. Taylor, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

MASTERSON, District Judge.

This Opinion and Order relates only to a motion for Summary Judgment filed by defendant, Thomas S. Lee. The complaint in this case was filed on December 24, 1969 to collect tax deficiencies of $36,085.54 assessed against Thomas S. Lee in 1952, almost two decades ago. It is alleged that Lee failed to withhold and pay over income and F.I. C.A. taxes for certain periods during 1951 and 1952.

The gap between the assessments and this collection has been bridged by three "agreements" between the government and Lee which extended the applicable Statute of Limitations. The particular statute which permits such agreements, 26 U.S.C. § 6502(a), reads as follows:

"(a) Length of period.—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

(1) within 6 years after the assessment of the tax, or

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy under section 6343 after such 6-year period, then before such release).

The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. The period provided by this subsection during which a tax may be collected by levy shall not be extended or curtailed by reason of a judgment against the taxpayer."

The first agreement was executed on January 14, 1957, which was within the six year period, and it extended the statute of limitations to December 31, 1962; the second executed on May 4, 1962 extended the date to December 31, 1967; and the third, executed on December 11, 1967 further extended the date to December 31, 1974. Defendant does not

contest the validity of the first two agreements, but he vigorously denies the validity of the third and most recent one. Accordingly, the defendant has moved for summary judgment.

First, Lee contends that to be effective, a Tax Collection Waiver must be signed personally by the District Director which the government admits was not done in this case. Secondly, he argues that the waiver is invalid because the defendant did not actually sign the agreement or if he did sign it, he was infirm at the time. Defendant was 83 years old when he allegedly signed the questioned agreement, and we have just been informed that he died less than a month ago at the age of 85. After careful examination of defendant's contentions, we have concluded that his motion for summary judgment must be denied.

The logic of defendant's first basis for summary judgment is fairly simple. The statute itself, 26 U.S.C. § 6502(a) (2) authorizes the "Secretary or his delegate" to sign a waiver for the government. And the implementing regulation promulgated in 1956 (Regs. § 301.-6502–1(a) (2) (i) which is the actual delegation to the District Director) reads as follows:

"(i) The 6-year period of limitation on collections after assessment of any tax may, prior to the expiration thereof, be extended for any period of time agreed upon in writing by the taxpayer and the district director. The extension shall become effective upon execution of the agreement by both the taxpayer and the district director."

Defendant argues that while the Secretary has authorized the District Director to sign waiver agreements, nowhere has he (the Secretary) authorized the District Director's *delegate* to sign. Nor does the Regulation extend any power to the District Director to sub-delegate his authority to anyone else. Thus, strictly construing the statute and the government's own Regulation, no one but the District Director *himself* may sign these waivers. Since the government admits that John A. Caggiano, a Revenue Officer, rather than the District Director signed this waiver agreement, defendant concludes that summary judgment should be granted.

■ The record shows that Caggiano signed under the authority of a document entitled "Delegation of Authority to Execute Consent Agreement Fixing the Period of Limitations on Collection" which was promulgated by the District Director. Hence, the narrow issue presented is whether such an agreement is valid where a Revenue Officer signs on behalf of the government pursuant to an express sub-delegation of authority by the District Director.

Defendant relies upon the Ninth Circuit's Opinion in Rohde v. United States, 415 F.2d 695 (9th Cir. 1969). But this reliance is misplaced because that case involved not merely a waiver, but a waiver accompanied by an offer of compromise. More importantly, the agreement (including the compromise offer) was not signed by the government at all. As the court pointed out, "by withholding his signature the District Director can avoid any appearance of consent to the terms of a waiver drafted by the taxpayer." *Id.* at 699. Since the absence of any signature, particularly where an offer of compromise is involved, could prejudice the taxpayer, the court held that the agreement was invalid.

In this case, however, the waiver *was* signed by the government, *albeit* not by the District Director personally. Accordingly, even if the defendant could conjure up a situation in which the government would want to deny the validity of a simple waiver (without an accompanying offer of compromise), nevertheless we are certain that the government would be estopped to deny the authority of the Revenue Officer acting pursuant to the express delegation. Consequently, the defendant could not possibly suffer prejudice under the circumstances presented by this case. On the other hand, if this and all other waiver agreements are invalidated because of this technicality, the loss of revenue to the govern-

ment could be enormous. And we see no reason whatsoever for permitting such a windfall to these particular taxpayers.

Moreover, we are convinced that by implication Regulation 301.6502(a) (2) (i) permits sub-delegation by the District Director. Obviously, it would be difficult, if not physically impossible, for the District Director personally to supervise and sign each waiver agreement. See Fleitmann v. Burnet, 65 F.2d 176 (D.C.Cir. 1933). From this fact, we can reasonably infer an intent on the part of the Secretary to permit sub-delegation. Otherwise, the statute itself would become meaningless since no adequate staff would be available to carry out the statutory scheme. And, if possible, we will interpret a regulation in such a way that supports the purpose of the underlying Act of Congress.

Traditional agency principles support our position.

"DELEGATION A NECESSARY OR NATURAL INCIDENT. If the work to be done is such that it could not be handled by one person, the assumption is inevitable that the agent was expected to employ helpers. So where a fire insurance agent was put in charge of a territory including several populous counties, it was held that he must have been intended to use helpers because of the amount of work involved." Meecham, Law of Agency, § 83 (1952).

The same reasoning applies to this case. For reasons of practicality, the Secretary must have intended the District Director to make extensive use of his staff.

Finally, we point out that historically, before the issuance of Regulation 301.-6502(a) (2) (i), Delegation Order 42 (November 1, 1956), 56–1 Cum.Bull. 1378, expressly permitted the waiver of the Statute of Limitations under the 1939 Code to be signed by a *subdelegate* of the District Director. Sub-delegation was also permitted under the 1924 Revenue Act. See § 250d and Fleitmann v. Burnet, *supra*. For some unexplained rea-

son, the regulation in question, which superseded Order 42, did not include express provision for sub-delegation.[1] Nevertheless, the practice since at least 1924 is yet another reason to assume that the Secretary intended sub-delegation to continue, even under the new regulation. Accordingly, defendant's motion for summary judgment based upon the District Director's failure to sign the waiver agreement must be denied.

 Defendant's second basis for his motion presents a far simpler issue. Defendant vigorously contends that he did not sign the questioned agreement; or if he did he, did not realize what he was doing at the time. In an affidavit, the Revenue Officer denies these allegations. If ever there was an instance of a "genuine issue as to a material fact," this is it. Accordingly, Summary Judgment must be denied on this point too. See Fed.R.Civ.Pro. 56(c).

---

1. Clearly the language of 26 U.S.C. § 6502(a) allows such a provision.